**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MIGUEL A. SANCHEZ, Individually and on Behalf of All Others Similarly Situated,<br><br>   Plaintiffs,<br><br>  v.<br><br>ARRIVAL SA, DENIS SVERDLOV, TIM HOLBROW, MICHAEL ABLESON, and AVINASH RUGOOBUR,<br><br>   Defendants. | Case No.: 1:22-cv-00172-DG-RLM<br><br>Hon. Diane Gujarati<br><br>ORAL ARGUMENT REQUESTED |

## KNS HOLDINGS LLC DBPP UA JAN. 1, 2016'S OPPOSITION TO COMPETING MOTIONS FOR LEAD PLAINTIFF

Adam M. Apton
55 Broadway, 10th Floor
New York, NY 10006
Tel: (212) 363-7500
Fax: (212) 363-7171
Email: aapton@zlk.com

*Attorneys for KNS Holdings LLC DBPP UA Jan. 1, 2016 and Proposed Lead Counsel for the Class*

**TABLE OF CONTENTS**

**Page**

I.    PRELIMINARY STATEMENT ................................................................................ 1

II.   ARGUMENT ....................................................................................................... 5

    A.    The PSLRA Process.................................................................................... 5

    B.    Mostaco Fails to Make the Required Preliminary Showing of Adequacy Because It Fails to Demonstrate Its Ability to Protect the Interests of the Class against the Numerous Red Flags Already Discovered about Mostaco's Status as an Off-Short Tax Shelter. ................................................................................................. 6

    C.    KNS Is the Movant with the Largest Financial Interest in the Action that also Meets the Requirements of Rule 23................................................................... 11

    D.    Discovery From Mostaco Corp. and Leon Siman is Warranted if the Court is Inclined to Give Them an Opportunity to Establish Their Adequacy and Typicality Belatedly. ................................................................................................. 14

III.  CONCLUSION................................................................................................... 16

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Andrade v. Am. Apparel, Inc.*,
No. 10-6352, 2011 U.S. Dist. LEXIS 79795 (C.D. Cal. Mar. 15, 2011) ............................... 15

*Apple v. LJ Int'l, Inc.,*
Nos. CV 07-6076 GAF (JWJx), 2008 U.S. Dist. LEXIS 12618 (C.D. Cal. Feb. 8, 2008) ....... 9

*Baydale v. Am. Express Co.*, No. 09 Civ. 3016(WHP),
2009 U.S. Dist. LEXIS 71668 (S.D.N.Y. Aug. 14, 2009) ...................................................... 16

*In re Boeing Co. Aircraft Sec. Litig.,*
2019 U.S. Dist. LEXIS 198259 (N.D. Ill. Nov. 15, 2019) ........................................................ 8

*Brown v. Biogen IDEC, Inc.*,
2005 U.S. Dist. LEXIS 19350 (D. Mass. July 26, 2005) ........................................................ 14

*Burnham v. Qutoutiao Inc.,*
No. 20-CV-6707 (SHS), 2020 U.S. Dist. LEXIS 206752 (S.D.N.Y. Nov. 4, 2020) .............. 14

*Camp v. Qualcomm Inc.,*
2019 WL 277360 (S.D. Cal. Jan. 22, 2019) ............................................................................ 8

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) ................................................................................................... 6

*In re Cendant Corp. Litig.,*
264 F.3d 201 (3d Cir. 2001) ............................................................................................... 6, 13

*Clair v. DeLuca*,
232 F.R.D. 219 (W.D. Pa. 2005) ............................................................................................. 8

*In re Enzymotec Ltd. Sec. Litig.,*
Civil Action No. 14-5556, 2015 U.S. Dist. LEXIS 25720 (D.N.J. Mar. 3, 2015) ................... 9

*In re Facebook, Inc.,*
288 F.R.D. 26 (S.D.N.Y. 2012) ........................................................................................... 5, 6

*Fischler v. Amsouth Bancorporation*,
No. 96-1567-Civ-T-17A, 1997 U.S. Dist. LEXIS 2875 (M.D. Fla. Feb. 6, 1997) ................ 14

*In re Gemstar-TV Guide Int'l, Inc. Sec. Litig.*
209 F.R.D. 447 (C.D. Cal. 2002) ............................................................................................. 8

*Gross v. AT&T Inc.,*
2019 U.S. Dist. LEXIS 22577 (S.D.N.Y. June 24, 2019) ........................................... 4, 7, 11

ii

*In re HEXO Corp. Sec. Litig.*,
   2020 U.S. Dist. LEXIS 166312 (S.D.N.Y. Sep. 11, 2020) ........................................ 1, 2, 7, 11

*Karp v. Diebold Nixdorf, Inc.*,
   2019 U.S. Dist. LEXIS 188670 (S.D.N.Y. Oct. 30, 2019) .................................................. 2, 7

*In re Nice Sys. Sec. Litig.,*
   188 F.R.D. 206 (D.N.J. 1999) ............................................................................................... 13

*Perez v. Hexo Corp.*,
   2020 U.S. Dist. LEXIS 32381 (S.D.N.Y. Feb. 25, 2020) ................................................ 7, 8, 9

*Peters v. Jinkosolar Holding Co.*,
   2012 U.S. Dist. LEXIS 38489 (S.D.N.Y. Mar. 19, 2012) ..................................................... 12

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. V. LaBranche & Co.,*
   229 F.R.D. 395 (S.D.N.Y. 2004) ............................................................................................. 6

*Piven v. Sykes Enters., Inc.,*
   137 F. Supp. 2d 1295 (M.D. Fla. 2000) ................................................................................... 8

*Rauch v. Vale S.A.*,
   No. 19-cv-526-RJD-SJB (E.D.N.Y.) .................................................................................. 2, 10

*Sgalambo v. McKenzie,*
   268 F.R.D. 170 (S.D.N.Y. 2010) ............................................................................................. 5

*Springer v. Code Rebel Corp.,*
   No. 16-cv-3492 (AJN), 2017 U.S. Dist. LEXIS 29983 (S.D.N.Y. Mar. 2, 2017) ................... 6

*In re Tronox, Inc. Sec. Litig.*,
   262 F.R.D. 338 (S.D.N.Y. 2009) ........................................................................................... 14

*In re USEC Sec. Litig.,*
   168 F. Supp. 2d 560 (D. Md. 2001) ......................................................................................... 9

*Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp, Inc.,*
   No. 10-cv-00864-SLT, 2011 U.S. Dist. LEXIS 88552 (E.D.N.Y. May 31, 2011) ................. 13

*Xianglin Shi v. SINA Corp.,*
   2005 U.S. Dist. LEXIS 13176 (S.D.N.Y. July 1, 2005) .......................................................... 4

**Statutes**

15 U.S.C. § 78u-4 ................................................................................................................ *passim*

**Rules**

FED. R. CIV. P. 23 ................................................................................................................ *passim*

## I.      PRELIMINARY STATEMENT

Of the movants who timely filed motions to be appointed lead plaintiff, Mr. Fan, through his self-directed retirement plan, KNS Holdings LLC DBPP UA Jan. 1, 2016 ("KNS"), is the movant "most capable of adequately representing the interests of class members" and, accordingly, the Court should appoint KNS as lead plaintiff in this securities fraud class action lawsuit.

When enacting the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Congress determined that prosecution of securities class actions should be supervised by lead plaintiffs with the "largest financial interest" who also "satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure" of typicality and adequacy to represent the proposed class. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii). Mr. Fan fits that bill. He sustained a significant loss of nearly $600,000 in connection with his investment in Arrival S.A. and is, therefore, incentivized to take to maximize a recovery on behalf of the class. Further, Mr. Fan's identity, history, and background are before the Court as required for the purposes of establishing his typicality and adequacy at the lead plaintiff stage. He is a professional real estate broker residing in Scottsdale, Arizona, who has experience conducting complex real estate transactions and investing in securities. Mr. Fan does not take his responsibilities lightly, spending considerable time interviewing various law firms on Zoom and in person prior to choosing the firm to represent him and the proposed class, not to mention negotiating a favorable fee agreement for the benefit of his class members. *See* ECF No. 23-4. Courts routinely hold that having such information at this stage is critical because "ample case law supports what one would have thought is an uncontroversial point – namely, that even a preliminary showing of adequacy requires a threshold amount of information regarding an individual movant's background and sophistication." *In re HEXO Corp. Sec. Litig.*, 2020 U.S. Dist. LEXIS 166312, at *4 (S.D.N.Y. Sep. 11, 2020).

In contrast, the only other entity that claims a larger financial interest than Mr. Fan and KNS is an off-shore entity named "Mostaco Corp." ("Mostaco"). Mostaco provides no information to allow the parties or, indeed, the Court to evaluate its typicality or adequacy to serve as lead plaintiff. In fact, the only information Mostaco provides is that it is a "private company incorporated in the British Virgin Islands" that has a "director" named Leon Siman who is an "experienced businessman" who "does not anticipate any problems overseeing this matter with counsel." ECF No. 18 at 8. Mostaco does not provide any disclosure as to the company's business, the industry in which it operates, its investment experience, who at Mostaco was responsible for the decision to purchase Arrival shares during the class period, who authorized the filing of its lead plaintiff motion or the process by which it selected an attorney and negotiated fees on behalf of the class. Mostaco's refusal to provide this basic information is intentional and is consistent with the fact that it and its "director" are linked to a number of off-shore tax shelters designed to hide the identities of its true owners in order to evade tax jurisdictions, according to "Pandora Paper" documents released by the International Consortium of Investigative Journalists ("ICIJ"). This absence of information precludes the parties and the Court from making any substantive assessment as to Mostaco's typicality and/or adequacy under Rule 23. *See In re HEXO Corp. Sec. Litig.*, 2020 U.S. Dist. LEXIS 166312, at *4-5 (quoting *Karp v. Diebold Nixdorf, Inc.*, 2019 U.S. Dist. LEXIS 188670, at *16-17 (S.D.N.Y. Oct. 30, 2019)).

This is not the first time Mostaco has refused to provide the basic information required for a for lead plaintiff application. Mostaco recently moved for lead plaintiff in *Rauch v. Vale S.A.*, No. 19-cv-526-RJD-SJB (E.D.N.Y.).[1] In that case, Mostaco likewise refused to provide

---

[1] Mostaco's certification submitted in support of its instant motion listed the *Rauch v. Vale S.A.* action but provided an incorrect case number. While this certainly could be attributed to a

information about its operations and structure after being expressly asked for it by another plaintiff who sought to serve as lead plaintiff. Mostaco ultimately withdrew its motion for lead plaintiff rather than provide the court or the parties in that case with information about its operations, structure, or ultimate beneficial owners. Significantly, the only information it provided in *Vale S.A.* was that its board had authorized the filing of the lead plaintiff motion, a fact that is conspicuously missing from the papers presently before the Court. Notably, in both actions Mostaco did not file the required Corporate Disclosure pursuant to Federal Rule of Civil Procedure 7.1.

With nothing else to consider, KNS's counsel researched Mostaco across the ICIJ's "Pandora Papers." Counsel quickly discovered that Mostaco's registered address in the British Virgin Islands is Mill Mall Tower, 2nd Floor, Wickhams Cay 1, Tortola, which serves as an office to numerous other off-shore tax shelter entities:



The "Pandora Papers" further show that Mostaco's "director" Leon Siman is connected to entities in Israel, Luxembourg, Lichtenstein, and Malta, among others, and has acted in the

---

typographical error, it should be troubling that even in that case its certification contained numerous errors and had to be revised.

capacities of a "Director," "Legal Representative," and "Judicial Representative" in other companies. Serving as a professional trustee or corporate director for tax shelters does not provide Mostaco with a credible basis to refer to Leon Siman as an "experienced businessman," let alone one who would be considered "typical" or "adequate" to oversee the litigation on behalf of the class. Indeed, assisting unknown beneficial owners in evading taxes runs contrary to the "honesty" and "trustworthiness" that lead plaintiffs typically possess. *See Xianglin Shi v. SINA Corp.,* 2005 U.S. Dist. LEXIS 13176, at *14-*15 (S.D.N.Y. July 1, 2005) ("Honesty and trustworthiness are . . . relevant factors in determining and [sic] individual's ability to serve as a class representative.").

In sum, Mostaco is an opaque shell company with no apparent operations other than to shelter its owners from various tax jurisdictions and, therefore, cannot be entrusted with the oversight of this litigation. *See Gross v. AT&T Inc.,* 2019 U.S. Dist. LEXIS 22577, at *5-6 (S.D.N.Y. June 24, 2019) (denying motion filed by Cypriot shell company that "failed to provide any information, beyond the name of a director, as to its business, management, structure, or its experience with securities litigation."). Moreover, the information presented renders highly suspect that Leon Siman has any legitimate economic interest in this litigation, nor is there any basis to believe that he, as one who purposefully masks holdings for himself and/or others, would appear in the United States for discovery or trial or otherwise adequately oversee this litigation.

Given that Mr. Fan and his self-directed retirement account, KNS, is the movant with the "largest financial interest" that legitimately and transparently also "satisfies the requirements of Rule 23," he respectfully requests that the Court grant KNS's motion in its entirety.

4

## II.    ARGUMENT

### A.    The PSLRA Process

The PSLRA sets forth the procedure for the selection of a lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1). Following the required notice announcing the class action, class members interested in serving as lead plaintiff are required to file a motion seeking appointment within 60 days thereafter. 15 U.S.C. §78u-4(a)(3)(A)(i). From the movants that file timely motions, the presumptive "most adequate plaintiff" is the "person or group of persons" that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I); *see also In re Facebook, Inc.,* 288 F.R.D. 26, 36-41 (S.D.N.Y. 2012).

After a presumptively most adequate plaintiff is identified, the Court must then determine if the presumption has been rebutted through "proof" by a member of the purported plaintiff class that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II). If the presumption is not rebutted, the presumptively most adequate plaintiff should be appointed as lead plaintiff. If, however, the movant with the largest financial interest is not adequate or not typical, then the court should apply the same analysis to the movant with the second largest financial interest, repeating the process until a candidate is found both typical and adequate. *See generally Sgalambo v. McKenzie,* 268 F.R.D. 170, 174 (S.D.N.Y. 2010).

5

**B.      Mostaco Fails to Make the Required Preliminary Showing of Adequacy Because It Fails to Demonstrate Its Ability to Protect the Interests of the Class against the Numerous Red Flags Already Discovered about Mostaco's Status as an Off-Short Tax Shelter.**

A "movant's financial interest is just a beginning point." *In re Facebook*, 288 F.R.D. at 37 (internal quotations omitted). "To qualify as the presumptive lead plaintiff, in addition to possessing a significant financial interest, a lead plaintiff must also 'satisf[y] the requirements of Rule 23.'" *Id.* In this regard, the "district court has latitude as to what information it will consider in determining typicality and adequacy." *In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002). Importantly, the PSLRA "does not permit courts simply to 'presume' that the movant with 'the largest financial interest in the relief sought by the Class' satisfies the typicality and adequacy requirements." *In re Cendant Corp. Litig.,* 264 F.3d 201, 264 (3d Cir. 2001). Rather, movants are required to affirmatively make "a sufficient preliminary showing that they can satisfy the relevant requirements of Federal Rule of Civil Procedure 23." *Springer v. Code Rebel Corp.,* No. 16-cv-3492 (AJN), 2017 U.S. Dist. LEXIS 29983, at *6 (S.D.N.Y. Mar. 2, 2017). "While the size, available resources or even experience of a candidate are not dispositive factors in appointing a lead plaintiff, they are nonetheless relevant to reaching a determination as to whether a candidate will be capable of adequately protecting the interests of the class." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. V. LaBranche & Co.,* 229 F.R.D. 395, 417 (S.D.N.Y. 2004).

The Court in *In re HEXO Corp. Securities Litigation*[2] rejected the argument "that a *prima*

---

[2] A related case was filed in the U.S. District Court for the Southern District of New York prior to the commencement of this action, styled *Schmutter v. Arrival SA*, et al., No. 1:21-cv-11016

*facie* showing of adequacy purportedly requires 'nothing more than the movant's PSLRA certification, a calculation of the movant's damages, and a resume or curriculum vitae from the movant's counsel showing its experience in the field of securities litigation.'" 2020 U.S. Dist. LEXIS 166312, at *3. This premise, as the Court explained, was "if anything, at odds with the PSLRA's text and structure" because if any movant could satisfy Rule 23 simply based on his or her financial interest and/or decision to retain a firm, then "the PSLRA's express requirement that the presumptively most adequate plaintiff 'otherwise satisf[y] the requirements of Rule 23' would be superfluous." *Id*. at *4 & n.2 (citing 15 U.S.C. §78u-4(a)(3)(B)(iii)). Consequently, "even a preliminary showing of adequacy requires a threshold amount of information regarding an individual movant's background and sophistication." *Id*. at *5.

Not only did Mostaco fail to provide basic background information, the information gleaned from a whistleblower repository about Mostaco and its purported signatory, Leon Siman, does not underscore confidence in the adequacy of Moscato to represent the class.  In instances far less disturbing than this, courts have routinely denied motions for lead plaintiff. *See, e.g., Perez v. Hexo Corp.*, 2020 U.S. Dist. LEXIS 32381 (S.D.N.Y. Feb. 25, 2020) (denied motion for lead plaintiff where movant provided no background information in opening motion); *Karp,* 2019 WL 5587148, at *5 (denying lead plaintiff motion of individual investors who "provided the Court with little to go on with respect to their alleged capacity to manage this litigation."); *Gross*, 2019 U.S. Dist. LEXIS 22577, at *5-6 ("Pro-Alpha has not provided sufficient information for the Court to determine that it will fairly and adequately protect the interests of the class.  . . . [I]t is an undisputed fact that Pro-Alpha has failed to provide any information, beyond the name of a

---

(S.D.N.Y.). The case was assigned to Judge Naomi Buchwald, who was the deciding judge in *HEXO Corp. Securities Litigation*.

director, as to its business, management, structure, or its experience with securities litigation. . . . The Court declines to appoint as lead plaintiff an entity that lacks basic transparency even at this juncture.").[3]

Mostaco provides scant information about its background, operations, or ability to oversee the litigation; instead, Mostaco's counsel merely states that Leon Siman is "authorized to bind" the entity and is an "experienced businessman" who "does not anticipate any problems overseeing this matter with counsel." ECF No. 18 at 8. No details are provided about either Mostaco's operations as a British Virgin Islands company (*e.g.*, business purpose, industry, employees) or Leon Siman himself (*e.g.*, professional or investing experience), nor about the various questionable tax-havens – Lichtenstein, Malta, Luxembourg – that Leon Siman's other businesses appear to be connected to. Indeed, without any information about the business that supposedly make him an "experienced businessman" there is no way to assess the veracity of that statement or whether that experience qualifies (or disqualifies) him from serving as the lead plaintiff. The absence of this basic information "preclud[es] the necessary inquiry into whether [Mostaco] has any conflicts with other class members." *See Perez*, 2020 U.S. Dist. LEXIS 32381, at *6.

---

[3] *See also In re Boeing Co. Aircraft Sec. Litig.,* 2019 U.S. Dist. LEXIS 198259, at *23-24 & n.10 (N.D. Ill. Nov. 15, 2019) (The failure to include any details in an individual investor's motion is a "red flag[]" because "a viable candidate for Lead Plaintiff would understand the need to make a more fulsome preliminary showing of adequacy from the outset of the lead plaintiff selection process."); *Camp v. Qualcomm Inc.,* 2019 WL 277360, at *2-*3 (S.D. Cal. Jan. 22, 2019) (noting that because the competing movant "failed to include any basic details about himself, including where he lives or who he is specifically in his motion," the court found "it difficult to determine whether Singh would indeed be a typical plaintiff for the class"); *Clair v. DeLuca*, 232 F.R.D. 219, 226-27 (W.D. Pa. 2005) ("Simply making a motion for lead plaintiff status, taken alone, establishes nothing about the movant's adequacy to take on this burdensome task."); *In re Gemstar-TV Guide Int'l, Inc. Sec. Litig.,* 209 F.R.D. 447, 452 (C.D. Cal. 2002) (finding that the "record contains no evidence that [the individual movants] are competent to serve as lead plaintiffs" or "to supervise the . . . attorneys representing them"); *Piven v. Sykes Enters., Inc.,* 137 F. Supp. 2d 1295, 1304-05 (M.D. Fla. 2000) (lack of information concerning plaintiff's "identity, resources, and experience" prevented appointment as lead plaintiff).

8

Moreover, the limited amount of public information unearthed about Mostaco raises additional "questions" over whether Mostaco "will meaningfully oversee and control the prosecution." *Id*. at *7-8. First and foremost, unlike in the *Vale S.A.* case where Mostaco expressly stated that its board authorized the filing of the lead plaintiff motion and for Leon Siman to act on its behalf, no such representation is made here. This suggests that Leon Siman does not, in this instance, have the authority of Mostaco's board to act on its behalf. This alone is fatal to Mostaco's motion. *See In re Enzymotec Ltd. Sec. Litig.,* Civil Action No. 14-5556, 2015 U.S. Dist. LEXIS 25720, at *6 (D.N.J. Mar. 3, 2015) (disqualifying lead plaintiff movant where certification "fail[ed] to demonstrate the authority of the signer to take action on [the entity]'s behalf.").

Second, Mostaco's certification submitted in support of its motion states it is "willing to serve as a lead plaintiff," whether it does so "either individually or as part of a group." ECF No. 18-2 at ¶3 ("I am willing to serve as a lead plaintiff either individually or as part of a group."). Presumably, if Leon Siman or Mostaco were really exercising independent agency they would want to know who they were potentially grouping with and under what circumstances such a group would be formed, but the certification appears to completely abrogate that responsibility. *See In re USEC Sec. Litig.,* 168 F. Supp. 2d 560, 564 (D. Md. 2001) ("Th[e] information [included in a PSLRA certification] is required so that the court may be assured that the named plaintiff has suffered more than a nominal loss, is not a professional plaintiff, and is otherwise interested and able to serve as a class representative."); *see also Apple v. LJ Int'l, Inc.,* Nos. CV 07-6076 GAF (JWJx), 2008 U.S. Dist. LEXIS 12618, *13 (C.D. Cal. Feb. 8, 2008) (movant group members were found inadequate after only submitting PSLRA certifications (as opposed to a declaration) that read, in part, "'I am willing to serve as a lead plaintiff *either individually or as part of a group*. A lead plaintiff is a representative party who acts on behalf of other class members in directing the

9

action, and whose duties may include testifying at deposition and trial.' These assertions hardly persuade the Court that they, as opposed to counsel, would be directing this litigation.") (emphasis added).

These informational and agency concerns are not merely theoretical. In fact, Mostaco was previously asked to provide information about its operations and organizational structure in *Rauch v. Vale S.A.*, No. 19-cv-526-RJD-SJB (E.D.N.Y.). *See Vale S.A.*, ECF No. 30-2. Instead of providing the information requested, Mostaco who was represented by the same counsel as here, provided a declaration containing few facts (raising more questions than it answered) and then mysteriously withdrew its motion to serve as lead plaintiff. *See Vale S.A.*, ECF Nos. 31-1 (declaration), 33 (notice of withdrawal of motion).

Third, Mostaco's refusal to provide information, here and in *Vale S.A.*, is presumably because Mostaco is nothing more than a secretive tax shelter that may or may not presently be "in penalty" according to British Virgin Islands authorities. From a review of publicly available records, Leon Siman appears to serve as an agent on behalf of unknown third-parties who control various off-short entities in jurisdictions known to be tax havens, such as Panama, Luxembourg, Malta, Lichtenstein and the British Virgin Islands. *See* Declaration of Adam M. Apton ("Apton Opp. Decl."), filed herewith as Ex. A (screenshots from ICIJ's "Pandora Papers" and "Paradise Papers", and OpenCorporate, showing Leon Siman connections). The International Consortium of Investigative Journalists ("ICIJ"), best known for publishing the "Panama Papers" which leaked millions of documents about off-shore financial systems and the various people and entities around the world that were involved, published results from its latest investigation in October 2021 referred to as the "Pandora Papers." *See* Apton Opp. Decl., Ex. B (ICIJ "Pandora Papers" Frequently Asked Questions). The Pandora papers, much like the Panama Papers but on a much

larger scale, investigated the corrupt off-shore financial system, compiling more than 11 million confidential records from 14 different off-shore service providers such as law firms, wealth managements advisors and corporate formation agencies. *Id.* Mostaco and Leon Siman are both listed in the Pandora Papers and, based on the ICIJ's research, it appears that Mostaco operates as nothing more than a secretive shell company.

In *Gross*, the court denied a motion by a lead plaintiff movant—like Mostaco, an opaque offshore shell company—that summarily asserted in its briefing that it satisfied the Rule 23 adequacy standard yet provided no information whatsoever about itself. *Gross*, 2019 U.S. Dist. LEXIS 22577, at\*5-6 ("[I]t is an undisputed fact that Pro-Alpha has failed to provide any information, beyond the name of a director, as to its business, management, structure, or its experience with securities litigation. . . . The Court declines to appoint as lead plaintiff an entity that lacks basic transparency even at this juncture."). Here, Mostaco has provided the Court with no information whatsoever with respect to, *inter alia*, its background, investment or business activities, structure, or the sources of its capital. Rather, it merely provided the Court with nothing more than vague, publicly-known facts regarding Mostaco – that it is a "private company incorporated in the British Virgin Islands." ECF No 18 at 8. This falls well short of even the minimal *prima facie* adequacy showing required at this stage. *See In re HEXO Corp. Sec. Litig.*, 2020 U.S. Dist. LEXIS 166312, at \*3-5.

### C.   KNS Is the Movant with the Largest Financial Interest in the Action that also Meets the Requirements of Rule 23.

Given Mostaco's inadequacy and/or atypicality to serve as lead plaintiff, Mr. Fan and his self-directed retirement account, KNS, is the movant before the Court with the largest financial

11

interest in the litigation that also satisfies Rule 23. As demonstrated below, KNS Holdings' claimed loss exceeds that of the remaining movants:

| Movant | Claimed Losses |
|---|---|
| ~~Mostaco Corp.~~ | ~~$ 2,472,483.41~~ |
| | |
| KNS Holdings LLC DBPP UA Jan. 1 2016 | $ 592,198.55 |
| | |
| David Wrafter | $ 356,804.88 |
| | |
| Temel Tirkes | $ 265,650.50 |
| | |
| Alexandre Lioubinine | $ 232,966.79 |
| | |
| Michael Macedo | $ 205,313.33 |
| | |
| Bruce Schmutter, Dean Samet, Faris Alqahtani | $ 120,597.48 |
| | |
| Yangchen Shi | $ 83,980.69 |
| | |

KNS's substantial financial interest ensures that it will prosecute the action diligently. *See Peters v. Jinkosolar Holding Co.*, 2012 U.S. Dist. LEXIS 38489, at *11 (S.D.N.Y. Mar. 19, 2012) ("The theory of these provisions was that if an investor with large financial stake in the litigation was made lead plaintiff, such a plaintiff ... would be motivated to act like a 'real' client, carefully choosing counsel and monitoring counsel's performance to make sure that adequate representation was delivered at a reasonable price").

Moreover, KNS properly and sufficiently demonstrated its adequacy through the declaration submitted by Mr. Fan as its administrator. The declaration provides information, such as Mr. Fan's state of residence, occupation, and investment experience, to sufficiently assess whether he appears capable to oversee the litigation. *See* ECF No. 23-4. Further, KNS sustained

12

damages in the same manner and course as all other class members, which demonstrates its typicality. KNS purchased Arrival securities, as did each member of the proposed class, at prices artificially inflated by Defendants' false and misleading statements and was damaged thereby. *See Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp, Inc.,* No. 10-cv-00864-SLT, 2011 U.S. Dist. LEXIS 88552, at \*12 (E.D.N.Y. May 31, 2011).

KNS also spent considerable time interviewing and selecting a firm to serve as lead counsel. *See* ECF No. 23-4. Mr. Fan, on behalf of KNS, spoke with attorneys at several firms about the lead plaintiff process, the responsibilities of the lead plaintiff, and how the action would progress after being appointed. *Id*. at ¶4. After speaking with these firms (in-person and via Zoom) and negotiating a favorable fee agreement for the class, he selected Levi & Korsinsky, LLP. *Id*. at ¶6. *In re Cendant.,* 264 F.3d at 265, 276 (the Court is to inquire about "whether the lead plaintiff's choices were the result of a good faith selection and negotiation process and were arrived at via meaningful arms-length bargaining[]" and negotiating a retainer is "one of the best ways for a court to ensure that [lead plaintiff] will fairly and adequately represent the interests of the class"); *see also In re Nice Sys. Sec. Litig.,* 188 F.R.D. 206, 223 (D.N.J. 1999) ("Not only should the proposed counsel fees be the result of hard-bargaining, but the initial selection of counsel should be the result of independent decision-making by the lead plaintiff.").[4]

There no evidence of any conflict between Mr. Fan and KNS and the class and the evidence presented demonstrates Mr. Fan's experience, sophistication, and willingness to engage substantively with counsel for the benefit of the class. More importantly, unlike Mostaco, Mr. Fan is readily available to attend hearings and participate in the action given his location in Scottsdale,

---

[4] Should the Court wish to view KNS's retainer agreement reflecting his fee agreement with proposed Lead Counsel, it is willing submit the retainer *in camera*.

13

Arizona. Mr. Fan and KNS have presented evidence showing his significant loss and is therefore highly motivated to maximize the recovery in this action. *Burnham v. Qutoutiao Inc.,* No. 20-CV-6707 (SHS), 2020 U.S. Dist. LEXIS 206752, at \*6-7 (S.D.N.Y. Nov. 4, 2020). Having the largest financial interest and satisfying the Rule 23 requirements of adequacy and typicality, KNS is entitled to the presumption of "most adequate plaintiff." This presumption may be rebutted only upon proof by a class member that KNS "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C § 78u-4(a)(3)(B)(iii)(II). No such proof exists.

**D.    Discovery From Mostaco Corp. and Leon Siman is Warranted if the Court is Inclined to Give Them an Opportunity to Establish Their Adequacy and Typicality Belatedly.**

"The PSLRA provides for discovery in connection with the appointment of lead plaintiff and counsel in limited circumstances, requiring 'the plaintiff first demonstrate a reasonable basis for a finding that the presumptively most adequate plaintiff is incapable of adequately representing the class.'" *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 347 (S.D.N.Y. 2009) (quoting 15 U.S.C. § 77z-1 (a)(3)(B)(iv)).

To demonstrate whether there is a reasonable basis for this request, KNS must demonstrate that it "remains debatable" whether Mostaco is the most adequate plaintiff. *See Brown v. Biogen IDEC, Inc.*, 2005 U.S. Dist. LEXIS 19350, at \*7 (D. Mass. July 26, 2005); *see also Fischler v. Amsouth Bancorporation*, No. 96-1567-Civ-T-17A, 1997 U.S. Dist. LEXIS 2875, at \*11 (M.D. Fla. Feb. 6, 1997) (holding that "the uncertainty of Movant's claims and the unanswered questions of Movant's intent, both raised by Plaintiff, are sufficient to meet that standard.").

14

Based on the issues identified above, Mostaco is inadequate to protect the class. That said, if the Court finds KNS's points regarding Mostaco debatable, KNS requests permission to seek documents and testimony from Mostaco's corporate representative and Leon Siman concerning its: routine operations; business purposes; organizational structure; relationships with other companies affiliated with Leon Siman; its ability and willingness to travel to the United States for discovery and trial; its basis for selecting counsel; its intent to serve as a sole lead plaintiff and/or co-lead plaintiff; Leon Siman's background and experience; and whether either Mostaco or Leon Siman is acting as an agent for an undisclosed third-party who is the interested party in this litigation.

Discovery of this nature is appropriate at this stage of the proceedings in order to protect the class. *See, e.g., Andrade v. Am. Apparel, Inc.*, No. 10-6352, 2011 U.S. Dist. LEXIS 79795, at *27 (C.D. Cal. Mar. 15, 2011) (granting a request for limited discovery, including deposition, regarding whether proposed lead plaintiff would fairly and adequately represent the class); *Deering v. Galena Biopharma, Inc.*, No. 3:14-cv-00367-SI, 2014 U.S. Dist. LEXIS 140766, at *32 (D. Or. Oct. 3, 2014) (noting that the court allowed limited discovery to determine largest financial interest); *In re Vonage Initial Pub. Offering Sec. Litig.,* Civil Action No. 07-177 (FLW), 2007 U.S. Dist. LEXIS 66258, at *11 (D.N.J. Sep. 6, 2007) (ordering discovery in the form of all documents relating to the transactions at issue and a one-hour deposition of the presumptive lead plaintiff, and using the evidence derived from this to find him inadequate). For that matter, KNS is concerned that, if these issues are not vetted by the Court now, these issues may result in the class action not being certified (either in the district court or on appeal) or in the defendants using the threat of these arguments to reduce the value of any settlement.

15

While KNS is prepared to conduct this discovery, there is no reason to given the facts already established, particularly when the risks to the class can be "circumvented at this early stage by selecting another lead plaintiff." *See Baydale v. Am. Express Co.*, No. 09 Civ. 3016(WHP), 2009 U.S. Dist. LEXIS 71668, at *9 (S.D.N.Y. Aug. 14, 2009)

## III.     CONCLUSION

Based on the foregoing, KNS respectfully requests that the Court grant its Motion.

Dated: March 8, 2022                                    Respectfully Submitted,

**LEVI & KORSINSKY, LLP**

By: */s/ Adam M. Apton*
Adam M. Apton
55 Broadway, 10th Floor
New York, NY 10006
Tel: (212) 363-7500
Fax: (212) 363-7171
Email: aapton@zlk.com

*Attorneys for KNS Holdings LLC DBPP UA Jan. 1, 2016 and Proposed Lead Counsel for the Class*

16