UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
MIGUEL A. SANCHEZ, Individually and
on Behalf of All Others Similarly Situated,

                                 Plaintiff,                         **MEMORANDUM**
                                                         **AND ORDER**

          **-against-**                                 **22-cv-172 (DG)**

ARRIVAL SA, DENIS SVERDLOV, TIM
HOLBROW, MICHAEL ABLESON, and
AVINASH RUGOOBUR,

                                 **Defendants.**
----------------------------------------------------------------x

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

Currently pending before this Court are competing motions for the appointment of lead plaintiff and approval of lead counsel, filed by the following movants: (1) Mostaco Corp. ("Mostaco"); (2) KNS Holdings LLC DBPP UA Jan. 1, 2016 ("KNS"); and (3) David Wrafter ("Wrafter"). See Mostaco Motion to Appoint Counsel and Appoint Lead Plaintiff (Feb. 22, 2022) ("Mostaco Mot."), Electronic Case Filing Docket Entry ("DE") #8; KNS Motion to Appoint Counsel and Appoint Lead Plaintiff (Feb. 22, 2022) ("KNS Mot."), DE #10; Motion to Appoint David Wrafter (Feb. 24, 2022) ("Wrafter Mot."), DE #25-1.[1]   For the reasons that follow, this Court grants Mostaco's motion for appointment as lead plaintiff and approval of lead counsel.   Accordingly, Mostaco is appointed as lead plaintiff, and its

---

[1] On December 22, 2021, a substantially similar action was filed in the United States District Court for the Southern District of New York, Schmutter v. Arrival SA, 1:21-CV-11016-NRB (S.D.N.Y.).  On February 22, 2022, Wrafter's motion was filed in that action, which was voluntarily dismissed without prejudice on March 7, 2022.  See DE #37, DE #48 in 1:21-CV-11016-NRB (S.D.N.Y.); Notice by David Wrafter (Feb. 24, 2022) at 1, DE #25.

choice of counsel, The Rosen Law Firm, P.A., is appointed as lead counsel.  The competing

motions filed by KNS and David Wrafter are denied as moot.

## BACKGROUND

As noted in the preceding footnote, on December 22, 2021, a substantially similar

action was filed in the United States District Court for the Southern District of New York,

Schmutter v. Arrival SA, 21-cv-11016-NRB (the "Schmutter action"), asserting claims under

the Private Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private

Securities Litigation Reform Act of 1995 (the "PSLRA"), against defendants Arrival SA

("Arrival"), Denis Sverdlov, Tim Holbrow, Michael Ableson, and Avinash Rugoobur,

covering the same class period as the instant action. i.e., between November 18, 2020 and

November 19, 2021.  On the same day, an early notice was issued pursuant to the PSLRA,

advising class members of the allegations and claims in that complaint, of the class period, and

of their option to seek appointment as lead plaintiff.  See PSLRA Early Notice, DE #9-1.

The instant case was filed on January 12, 2022 against the same defendants for

violations under the Exchange Act, covering the same time period.  See Complaint (Jan. 12,

2022) ("Compl."), DE #1.   The Complaint alleges violations of Sections 10(b) and 20(a) of

the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Securities and Exchange Commission

Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, by Arrival and its executive

officers, Denis Sverdlov, Tim Holbrow, Michael Ableson, and Avinash Rugoobur

(collectively, "defendants").

Defendant Arrival is a manufacturer and distributor of commercial electric vehicles

("EVs"), including vans, cars and buses.  See Compl. ¶ 2.  Arrival develops vertically

2

integrated technologies that create a new approach to the assembly of EVs.  See id.  According

to Arrival, its proprietary in-house developed components, materials, software and robotic

technologies, combined with low capital expenditure and rapidly scalable microfactories,

enable Arrival to produce EVs that are priced competitively to traditional fossil fuel vehicles

and with a substantially lower total cost of ownership for customers.  See id.

On March 24, 2021, Arrival consummated a business combination with CIIG Merger

Corp, a special purpose acquisition company, also known as a "blank check" company,

incorporated for the purpose of entering into a merger, share exchange, asset acquisition, share

purchase, recapitalization, reorganization, or similar business combination with one or more

businesses or entities.  Id. ¶ 3.  Upon the consummation of the merger, CIIG changed its name

from CIIG to Arrival Vault US Inc.  See id.  The Complaint alleges that during the class

period, defendants made false and misleading statements and/or failed to disclose that: "(i) the

Company [Arrival] would record a substantially greater net loss and adjusted EBITDA

[earnings before interest, taxes, depreciation and amortization] loss in the third quarter of 2021

compared to the third quarter of 2020; (ii) the Company would experience far greater capital

and operational expense to operate and deploy its microfactories and manufacture EV vehicles

than [the Company] had disclosed; (iii) the Company would not capitalize on or achieve

profitability or provide meaningful revenue in the time periods disclosed; (iv) the Company

would not achieve its disclosed production and sales volumes; (v) the Company would not meet

the disclosed production rollout deadlines; (vi) . . . the Company materially overstated its

financial and operational position and/or prospects; and (vii) as a result, the Company's public

statements were materially false and misleading at all relevant times."  Id. ¶ 5.

3

On November 8, 2021, Arrival announced its financial results for the third quarter of 2021, including a loss of €26 million (compared to a loss of €22 million during the same quarter a year earlier), and adjusted EBITDA loss for the quarter of €40 million (compared to a loss of €18 million in the third quarter of 2020).  See id. ¶ 6.  Arrival also retracted its 2022 revenue goals and significantly scaled back its long-term projections, pushing its production and sales timeline into later time periods.  Id.  On this news, shares of Arrival declined $4.33, or 24 percent, to close at $13.46 on November 10, 2021 on unusually high trading volume. See id. ¶¶ 7, 62.

On November 17, 2021, Arrival announced a $200 million offering of green convertible senior notes due 2026, which were intended to finance the development of EVs. See id. ¶¶ 8, 63.  On the same day, Arrival announced the commencement of an underwritten public offering of 25 million ordinary shares in a bid to raise around $330 million in cash.  See id. ¶¶ 8, 64.  On this news, Arrival shares dropped $0.82 or 8 percent, to close at $9.91 on November 18, 2021 on unusually high trading volume.  Id. ¶¶ 9, 66.

Between February 22 and 24, 2021, seven putative class members filed competing applications in this action to appoint the respective movant as lead plaintiff and approve his or its choice of class counsel.  See Mostaco Mot.; KNS Mot.; Wrafter Mot.; Yangchen Shi Motion to Appoint Counsel and for Appointment as Lead Plaintiff (Feb. 22, 2022), DE #13; Michael Macedo Motion to Appoint Counsel and Appoint Lead Plaintiff (Feb. 22, 2022), DE #16; Alexandre Lioubinine Motion to Appoint Counsel and for appointment as Lead Plaintiff (Feb. 22, 2022), DE #18; Temel Tirkes Motion to Appoint Counsel and Lead Plaintiff (Feb. 23, 2022), DE #22.  Four movants — Yangchen Shi, Michael Macedo, Alexandre Lioubinine,

4

and Temel Tirkes — filed notices of non-opposition to the competing motions for appointment as lead plaintiff. See Yangchen Shi Notice of Non-Opposition (Mar. 4, 2022), DE #26; Temel Tirkes Notice of Non-Opposition (Mar. 7, 2022), DE #27; Michael Macedo Response to Motion (Mar. 8, 2022), DE #28; Alexandre Lioubinine Notice of Non-Opposition (Mar. 8, 2022), DE #29. Those motions have been terminated as moot. Therefore, only three motions — those of Mostaco, KNS and Wrafter — remain pending.

## DISCUSSION

### I.    Appointment of Lead Plaintiff

The PSLRA establishes the procedure for the appointment of a lead plaintiff in an Exchange Act case. The law directs the court to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members" (generally known as the "most adequate plaintiff"). 15 U.S.C. § 78u-4(a)(3)(B)(i). Courts follow a two-step process to determine the most adequate plaintiff. See generally Darish v. N. Dynasty Minerals Ltd., 20-cv-5917 (ENV), 2021 WL 1026567, at *5 (E.D.N.Y. Mar. 17, 2021); In re Gentiva Sec. Litig., 281 F.R.D. 108, 111-12 (E.D.N.Y. 2012). In the first stage of the inquiry, the PSLRA establishes a "presumption" that the most adequate plaintiff is the person or group of persons who or that:

(aa) has either filed the complaint or made a motion in response to a notice . . . ;

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

5

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Once the court determines that there exists a presumptively adequate lead plaintiff, it must move to the second stage of the inquiry: whether that presumption has been sufficiently "rebutted" by a member of the purported plaintiff class. See 15 U.S.C. § 78u-(a)(3)(B)(iii)(II). Specifically, the presumption may be rebutted "only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff –

(aa) will not fairly and adequately protect the interests of the class; or

(bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class."

Id.

The PSLRA's legislative history reveals that Congress enacted the law in response to class action abuses, as plaintiffs' lawyers would otherwise "race to the courthouse" to secure the lead plaintiff designation. See *In re* Olsten Corp. Sec. Litig., 3 F.Supp.2d 286, 294 (E.D.N.Y. 1998). "By enacting the PSLRA, Congress intended to 'increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel.'" Id. (quoting H.R. REP. NO. 104-369 at 32 (1995)). "As such, Congress sought to encourage institutional investors and other class members with large amounts at stake to step forward as the ideal lead plaintiffs in private securities litigation." Silverberg v Dryships Inc., 17-CV-4547 (SJF)(ARL), 2018 WL 10669653, at *4 (E.D.N.Y. Aug. 21, 2018) (internal quotation marks and citation omitted).

### A.    Notice Requirement and the Filing of Timely Motions

As an initial matter, the PSLRA requires that the plaintiff who files the first action publish notice to the class within 20 days of filing the action, in "a widely circulated national business-oriented publication or wire service," advising members:

(I)    of the pendency of the action, the claims asserted therein, and the purported class period; and

(II)    that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

On December 22, 2021, the same day that the Schmutter complaint was filed, a notice was published in *Business Wire* announcing that a securities class action had been filed against defendants. See PSLRA Early Notice. The published press release advised those "who wishe[ed] to serve as lead plaintiff" to file the appropriate motion no later than February 22, 2022. See id. at ECF p. 2. No moving party has challenged the adequacy of the December 22, 2021 notice, and the filing of a press release through *Business Wire* is an appropriate means of satisfying the PSLRA's notice requirement. See, e.g., Chitturi v. Kingold Jewelry, Inc., 20-CV-2886-LDH-SJB, 2020 WL 8225336, at *3 (E.D.N.Y. Dec. 22, 2020) (collecting cases).

Based on the December 22, 2021 publication date, the 60-day period in which members of the putative class could move to serve as lead plaintiff expired on February 22, 2022.

7

Accordingly, having been filed on or before February 22, 2022,[2] all of the pending motions for appointment were timely filed with this Court.

B.      **Largest Financial Interest**

The PSLRA requires courts to "adopt a presumption that the most adequate plaintiff . . . has the largest financial interest in the relief sought by the class[,]" 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb), but offers no statutory guidance for determining which plaintiff has the largest financial interest. See Darish, 2021 WL 1026567, at *5; In re Gentiva, 281 F.R.D. at 117. Courts in the Second Circuit have adopted the four "*Olsten* factors" to determine which plaintiff has the largest financial interest: "(1) the [total] number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered during the class period." In re Olsten Corp., 3 F.Supp.2d at 295 (citing Lax v. First Merchs. Acceptance Corp., No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997)); accord Chitturi, 2020 WL 8225336, at *4; In re Gentiva, 281 F.R.D. at 112. Most crucial to the Court's determination is the fourth factor – the approximate financial loss suffered. See Plymouth Cnty. Ret. Ass'n v. Innovative Tech., Inc., 21 Civ. 4390 (VM), 2021 WL 4298191, at *2 (S.D.N.Y. Sept. 21, 2021); Darish, 2021 WL 1026567, at *5; Baughman v. Pall Corp., 250 F.R.D. 121, 125 (E.D.N.Y. 2008).

---

[2] Since Wrafter's motion was timely filed in the Schmutter action on February 22, 2022, the Court deems it timely here. See generally Reitan v. China Mobile Games & Entm't Grp., Ltd., 68 F.Supp.3d 390, 399 (S.D.N.Y. 2014) (deeming timely refiled motion for appointment as lead counsel where original motion was filed before deadline); Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co., LLC, 229 F.R.D. 395, 403 (S.D.N.Y. 2004) ("motion will not be denied based on what appears to be a docketing irregularity").

Based on the record before the Court, Mostaco is the movant that has the largest financial interest: during the Class Period, Mostaco is alleged to have suffered losses totaling $2,472,483.41.  See Mostaco Loss Chart, DE #9-3.  The movant with the second greatest loss, KNS, suffered losses of $592,198.55, less than 25 percent of Mostaco's loss.  See KNS Loss Chart, DE #12-2.  Indeed, movants KNS and Wrafter concede that they do not have the largest financial interest.  See, e.g., KNS Reply in Opposition (Mar. 15, 2022) at 3, DE #35 ("KNS possessing the second-largest financial interest in the Action . . . .");  Wrafter Reply in Support (Mar. 15, 2022) at 1, DE #33 ("The only two movants with a greater financial interest than Wrafter . . . .").

**C.      Satisfaction of Rule 23**

After the Court has identified the plaintiff with the largest financial interest in the litigation, it must "focus on that plaintiff alone and be limited to determining whether he satisfies the other statutory requirements [of the PSLRA]."  Khunt v. Alibaba Grp. Holding Ltd., 102 F.Supp.3d 523, 535 (S.D.N.Y. 2015) (citation and internal quotation marks omitted); Darish, 2021 WL 1026567, at *6; Pirelli, 229 F.R.D. at 411.  Under the PSLRA, in order to serve as lead plaintiff, the movant with the largest financial interest must also satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure.  See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).  Rule 23(a) specifies four requirements for certification of a class action: numerosity, commonality, typicality, and adequacy.  Fed. R. Civ. P. 23(a).

In determining whether the presumptively most adequate plaintiff satisfies Rule 23 for the purposes of the PSLRA, a court need only consider whether the lead plaintiff's claims are typical and adequate, and the presumptive lead plaintiff need only make a preliminary, prima

9

facie showing that his, her or its claims satisfy the typicality and adequacy requirements of Rule 23.  See Plymouth Cnty. Ret., 2021 WL 4298191, at *2; Chitturi, 2020 WL 8225336, at *5; *In re* Gentiva, 281 F.R.D. at 112 (citation omitted).  At this initial stage of the litigation, "a wide ranging analysis under Rule 23 is not appropriate . . . and should be left for consideration of a motion for class certification."  Darish, 2021 WL 1026567, at *6 (citation and quotations omitted).[3]

Mostaco has made the requisite preliminary showing with respect to Rule 23(a)'s typicality requirement.  Cases in the Second Circuit have held that the typicality requirement is met where "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  Brady v. Top Ships Inc., 324 F.Supp.3d 335, 350 (E.D.N.Y. 2018) (quoting *In re* Drexel Burnham Lambert Grp., Inc., 960 F.2d 285, 291 (2d Cir. 1992)).  Like other members of the putative class, Mostaco purchased Arrival shares during the class period and Mostaco's claims arise out of defendants' alleged misrepresentations or omissions about Arrival's financial condition, prospects and projections.  After Arrival disclosed further information about its financial results and its raising of capital, Arrival's stock price declined, causing injury to Mostaco of the same kind, and arising out of the same facts, as that suffered by other class members.  Mostaco's claims for violation of the securities laws and resulting damages are based on the same legal arguments as those of the other movants.  Thus, Mostaco, as the movant with the largest financial interest in the litigation, has preliminarily demonstrated typicality under Rule 23(a).

---

[3] "[A]ny finding that Rule 23 requirements have been met at this stage do[es] not preclude a later challenge in the context of a Rule 23 class certification motion."  Ford v. Voxx Int'l Corp., No. 14-CV-4183(JS)(AYS), 2015 WL 4393798, at *3 (E.D.N.Y. July 16, 2015).

Mostaco has also preliminarily satisfied the adequacy requirement of Rule 23(a). The adequacy requirement is satisfied where: "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." Plymouth Cnty. Ret., 2021 WL 4298191, at *2 (citation omitted). Based on Mostaco's submissions, the Court is satisfied that Mostaco's retained counsel, The Rosen Law Firm, P.A., is experienced, competent, and well-qualified to conduct this class action securities litigation. Mostaco has a significant financial interest in the outcome of the case so as to vigorously advocate on behalf of the class and, in its papers, it denies the existence of any conflicts of interest with absent class members, see Mostaco Memorandum in Support (Feb. 22, 2022) at 9, DE #9, and none is apparent to the Court.

Nevertheless, KNS contends that Mostaco has not provided sufficient information for the Court to evaluate its typicality or adequacy to serve as lead plaintiff. See KNS Memorandum in Opposition (Mar. 8, 2022) ("KNS Opp.") at 2, 7, 8, DE #32. Moreover, KNS alleges that Mostaco "and its 'director' are linked to a number of off-shore tax shelters designed to hide the identities of its true owners in order to evade tax jurisdictions[.]" Id. at 2. KNS alleges that "Mostaco and [its director] Leon Siman are both listed in the Pandora Papers"[4] and that "Leon Siman appears to serve as an agent on behalf of unknown third-parties

---

[4] According to KNS, the "Pandora Papers" are the results of the latest investigation by the International Consortium of Investigative Journalists (the "ICIJ"), best known for publishing the "Panama Papers," "which leaked millions of documents about off-shore financial systems and the various people and entities around the world that were involved[.]" KNS Opp. at 10.

11

who control various off-shor[e] entities in jurisdictions known to be tax havens, such as Panama, Luxembourg, Malta, Lichtenstein and the British Virgin Islands." Id. at 10-11. Therefore, according to KNS, "it appears that Mostaco operates as nothing more than a secretive shell company." Id. at 11.[5]

In response to KNS's allegations, this Court directed Mostaco to submit a declaration describing the background and experience of Mostaco and Mr. Siman. See Order (Mar. 18, 2022). Mr. Siman's declaration provides sufficient information about his and Mostaco's background to enhance Mostaco's showing of adequacy. Mostaco is a British Virgin Islands corporation, which was established in 2015 and maintains offices in Tortola, British Virgin Islands. See Declaration of Leon Siman dated March 23, 2022 (Mar. 24, 2022) ¶ 3, DE #36-1. Mostaco is primarily engaged in business and strategic consulting, including consulting services relating to business or trade disputes. See id. ¶ 4. In connection with its regular business, Mostaco "has gained substantial experience retaining and overseeing counsel." Id. As a director of Mostaco, Mr. Siman's duties include "overseeing and retaining counsel." Id. ¶ 5. Mr. Siman has bachelor degrees in engineering and law, and a law degree. See id. ¶ 2. Mr. Siman "understands the obligations" entailed in serving as lead plaintiff and he and Mostaco "are committed to vigorously prosecute this action to maximize the recovery for all Arrival investors[.]" Id. ¶ 6.

---

[5] The questions KNS raised regarding Mr. Siman's authority to act for Mostaco, see KNS Opp. at 3, 9, have been resolved by Mr. Siman's declaration, wherein he avers that he was authorized by Mostaco to submit his declaration and to execute the original PSLRA certification on Mosatco's behalf, see Siman Decl. ¶ 2. Courts routinely allow the supplementation of PSLRA certifications. See Batter v. Hecla Mining Co., 19-cv-4883 (ALC), 2020 WL 1444934, at *9 (S.D.N.Y. Mar. 25, 2020); Huang v. Airmedia Grp. Inc., 1:15-cv-4966 (ALC), 2015 WL 10846763, at *2 (S.D.N.Y. Nov. 10, 2015). The other issues raised by KNS about the boilerplate language in Mr. Siman's certification are unpersuasive. See KNS Opp. at 9; KNS Sur-reply (Mar. 25, 2022) at 2-3, DE #38.

As discussed above, "a wide ranging analysis under Rule 23 is not appropriate" at this stage of the case. See Darish, 2021 WL 1026567, at *6 (citation omitted). Rather, courts require only a "preliminary showing" of adequacy on a motion for appointment as lead plaintiff. See id. Indeed, in determining whether a movant is entitled to the benefit of the statutory presumption, most courts rely solely on the three factors discussed above, without requiring affidavits describing the movant's background and experience beyond the barebones PSLRA certifications submitted with a movant's opening papers.[6] See, e.g., Batter, 2020 WL 1444934, at *4-7 (finding movant had "made the requisite preliminary showing of adequacy under Rule 23" before concluding that the lead plaintiff presumption was rebutted where, in earlier regulatory action, movant had consented to a finding that he had engaged in securities fraud); Murphy v. JBS S.A., 17-CV-3084, 2017 WL 4480751, at *5 (E.D.N.Y. Oct. 6, 2017); Huang, 2015 WL 10846763, at *2-3; see also Levitt v. Rogers, 257 F.App'x 450, 452 (2d Cir. 2007) ("we also must be mindful of the statutory language of the PSLRA, which makes clear that there is a rebuttable presumption in favor of the plaintiff with the largest financial interest in the relief sought by the class"). Indeed, KNS acknowledges that "the size, available resources or even experience of a candidate are not dispositive factors in appointing a lead plaintiff[.]" See KNS Opp. at 6 (quoting Pirelli, 229 F.R.D. at 417).

Moreover, the cases relied on by KNS, issued out of the Southern District of New York and elsewhere, are distinguishable on their facts. See KNS Opp. at 4, 6-8, 11. In Gross v.

---

[6] KNS contends that in another case filed in this District, Rauch v. Vale S.A., No. 19-cv-526-RJD-SJB, in which Mostaco competed for appointment as lead plaintiff, Mostaco "withdrew its motion for lead plaintiff rather than provide the court or the parties in that case with information about its operations, structure, or ultimate beneficial owners." KNS Opp. at 3. In fact, although Mostaco did ultimately withdraw its motion for appointment as lead plaintiff in that case, the court never ordered Mostaco to provide any further information beyond that contained in its certification. Mostaco explains that it withdrew its motion in Rauch because it was subject to unique defenses as a net seller. See Mostaco Reply (Mar. 15, 2021) at 11 n.5, DE #34.

13

AT&T Inc., 19-CV-2892 (VEC), 2019 U.S. Dist. LEXIS 225777 (S.D.N.Y. June 24, 2019), the Court found that it was an "undisputed fact that [the movant] has failed to provide any information, beyond the name of a director, as to its business, management, structure, or its experience with securities litigation." 2019 U.S. Dist. LEXIS 225777, at *6. In Perez v. HEXO Corp., 19 Civ. 10965 (NRB), 2020 WL 905753 (S.D.N.Y. Feb. 25, 2020), reconsideration denied sub nom. *In re* HEXCO Corp. Sec. Litig., 2020 WL 5503634 (S.D.N.Y. Sept. 11, 2020), the movant "failed to provide *any* information regarding his experience in his preliminary motion." 2020 WL 905753, at *3 (emphasis in original). When the movant submitted a declaration with "vague" information, the Court doubted that the movant, "an individual investor about whom little is known -- possesses the requisite sophistication to serve as lead plaintiff." Id. In addition, in arguing that a movant must provide detailed background information, KNS relies primarily on cases that, like Perez, involved individuals, rather than institutional investors, seeking to be appointed lead plaintiff. See, e.g., Karp v. Diebold Nixdorf, Inc., 19 Civ. 6180(LAP), 2019 WL 5587148, at *6 (S.D.N.Y. Oct. 30, 2019) ("[T]he Aroras, as individual investors, have provided the Court with little to go on with respect to their alleged capacity to manage this litigation"; similarly "disquiet[ing]" was "the exaggerated loss totals originally submitted" by them), adhered to on reconsideration, 2019 WL 6619351 (S.D.N.Y. Dec. 15, 2019); *In re* Boeing Co. Aircraft Sec. Litig., No. 19 CV 2394, 2019 WL 6052399, at *5, *7-8 (N.D. Ill. Nov. 15, 2019) (rejecting individual investors' motion where the only information provided beyond that required in the certifications was "that they live in Las Vegas"; citing individuals' "unusual purchase history of Boeing stock, [and] their facially implausible and uncorroborated explanation of their

14

wealth"); Camp v. Qualcomm Inc., Case No. 18-CV-1208-AJB-BLM, 2019 WL 277360, at *3 (S.D. Cal. Jan. 22, 2019) (denying motion of individual investor who "failed to include any basic details about himself, including where he lives or who he is specifically").

Here, Mostaco and Mr. Siman have provided a description of Mostaco's business, and their business and litigation background, sufficient to establish their financial and legal sophistication. The Court finds this record a sufficient basis on which to determine that Mostaco has made a prima facie showing of adequacy.

Moreover, the presumption that Mostaco is the most adequate plaintiff has not been rebutted, inasmuch as "exacting proof is needed to rebut the presumption." Murphy, 2017 WL 4480751, at *5 (citation, internal quotation marks, and alteration omitted). KNS's accusations are based on speculation and innuendo that Mostaco and Mr. Siman "are linked to a number of off-shore tax shelters." KNS Opp. at 2. For example, KNS alleges that Mr. Siman "is connected to entities in Israel, Luxembourg, Lichtenstein, and Malta" and would not "appear in the United States for discovery or trial." Id. at 3, 4. KNS ignores the fact that "courts routinely appoint foreign investors as lead plaintiffs." Cohen v. Luckin Coffee Inc., 1:20-cv-01293-LJL, 2020 WL 3127808, at *6 (S.D.N.Y. June 12, 2020) (quoting Sgalambo v. McKenzie, 268 F.R.D. 170, 176 (S.D.N.Y. 2010)). In addition, KNS has submitted no evidence that Mostaco is a tax shelter nor explained the relevance of its allegations even if true. See Murphy, 2017 WL 4480751, at *7 & n.3 ("allegations concerning the potential use of tax havens . . . are mere speculation and innuendo"; competing movants "make no attempt to explain why that conduct would render [presumptive lead plaintiff] inadequate to serve as lead plaintiff"); Huang, 2015 WL 10846763, at *2 (finding that movant made a prima facie

15

showing of Rule 23 adequacy despite "conclusory allegations that [movant] may be an off-shore tax shelter"); Andrade v. Am. Apparel, Inc., CASE NO. 10-06352 MMM (PJWx), 2011 WL 13130706, at *10 (C.D. Cal. Mar. 15, 2011) (finding competing movant's "vague" and "unsubstantiated" claims of tax improprieties were insufficient to rebut presumption); *In re* Flight Safety Techs., Inc. Sec. Litig., 231 F.R.D. 124, 131 (D. Conn. 2005) (finding allegations of a tax avoidance scheme did not prevent movant from meeting adequacy requirement, "given the stage of the proceeding [and] the lack of persuasive evidence on this point before the Court"). The ICIJ website referenced by KNS, see *supra* note 4, specifically denies "that everyone that appears in the Pandora Papers is involved in tax avoidance or evasion." See https://www.icij.org/investigations/pandora-papers/frequently-asked-questions-about-the-pandora-papers-and-icij (last visited Mar. 30, 2022). "Such 'speculative and hypothetical' allegations should not prevent the appointment of a lead plaintiff." Huang, 2015 WL 10846763, at *2 (quoting *In re* Olsten Corp., 3 F.Supp.2d at 296); see Silverberg, 2018 WL 10669653, at *11 ("unsubstantiated website postings" concerning alleged fraud and civil judgment found insufficient to rebut presumption), Pirelli, 229 F.R.D. at 416 (rejecting allegations of misconduct that resulted in a settlement but were not "actually proven or otherwise established on the record"). As the Third Circuit has observed, "[a]llegations of impropriety are not proof of wrongdoing. If they were, then any class member (or lawyer seeking to be appointed lead counsel) could disable any presumptive lead plaintiff by making unsupported allegations of impropriety." *In re* Cendant Corp. Litig., 264 F.3d 201, 270 (3d Cir. 2001).

Moreover, allegations of misconduct must be "germane" to the action and implicate the movant's "ability to serve as a fiduciary." See Silverberg, 2018 WL 10669653, at \*10 (internal quotation marks and citations omitted); Velez v. Novartis Pharms. Corp., 244 F.R.D. 243, 270 (S.D.N.Y. 2007) ("[A]ny allegations concerning the representative's adequacy must be relevant to the claims in the litigation[.]"); Savino v. Computer Credit, Inc., 173 F.R.D. 346, 357 (E.D.N.Y. 1997) ("[A]ny allegations concerning the representative's adequacy must be relevant to the claims in the litigation, such that the problems could become the focus of cross-examination and unique defenses at trial, to the detriment of the class. Plaintiffs' testimony or credibility that is subject to attack must be on an issue critical to one of their causes of action.") (internal quotation marks and citations omitted), aff'd, 164 F.3d 81 (2d Cir. 1998). The purpose of the adequacy inquiry is "to uncover conflicts of interest between named parties and the class they seek to represent." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625 (1997). "[T]he existence of questions about the credibility of named representatives will not ordinarily place the interests of those representatives in conflict with other class members. . . . Only when attacks on the credibility of the representative party are so sharp as to jeopardize the interests of absent class members should such attacks render a putative class representative inadequate." Diaz v. Residential Credit Sols., Inc., 299 F.R.D. 16, 21 (E.D.N.Y. 2014) (quoting *In re* Priceline.com Inc., 236 F.R.D. 89, 97 (D. Conn. 2006)).

KNS's allegations fail to demonstrate that Mostaco will not fairly and adequately protect the interests of the putative class and/or is subject to unique defenses that render it incapable of adequately representing the putative class. See Silverberg, 2018 WL 10669653, at \*10-11 (unrelated arrest did not bear on movant's ability to serve as fiduciary). Despite

17

KNS's allegations of wrongdoing, there has been no showing that Mostaco's interests are "antagonistic to those of the proposed class." Pirelli, 229 F.R.D. at 413.  On the contrary, Mostaco has a significant financial interest that should "ensure vigorous advocacy on behalf of the class." Kux-Kardos v. VimpelCom, Ltd., 151 F.Supp.3d 471, 478 (S.D.N.Y. 2016) (internal quotation marks and citation omitted), reconsideration denied, 2016 WL 5390902 (S.D.N.Y. Sept. 26, 2016) ; see Levitt, 257 F.App'x at 452 ("There is no reason to believe that the Levitt Group would not fairly or adequately protect the interests of the class in regards to the litigation against Bear Stearns, since the members of the Levitt Group had the largest financial interest in the outcome of that litigation[.]"); Chitturi, 2020 WL 8225336, at *6.  In sum, the Court is satisfied that Mostaco is "committed to assist The Rosen Law Firm, P.A. to ensure the largest possible recovery [for] the Class." See Siman Decl. ¶ 4.

In making this determination, the Court is mindful that Congress has demonstrated its preference for an institutional investor to serve as lead plaintiff.  See Randall v. Fifth St. Fin. Corp., 15-cv-7759(LANK), 2016 WL 462479, at *3 (S.D.N.Y. Feb. 1, 2016) (appointing institutional investor where individual investor had approximately equal loss); Pirelli, 229 F.R.D. at 402 (noting that the prevention of lawyer-driven litigation "could best be achieved, according to Congress, by encouraging institutional investors to serve as lead plaintiffs"). Indeed, part of the reason that Congress focused on the plaintiff with the largest financial interest at stake in the litigation was to increase the chances of an institutional investor serving as lead plaintiff.  See Randall, 2016 WL 462479, at *3 & nn.8 & 10 (citing legislative history); see also H.R. CONF. REP. 104–369, at 32–35 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 731–34 ("The Conference Committee believes that increasing the role of

18

institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions."); S. REP. NO. 104–98, at 10–12 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 689–91 ("The Committee intends to increase the likelihood that institutional investors will serve as lead plaintiffs by requiring the court to presume that the member of the purported class with the largest financial stake in the relief sought is the 'most adequate plaintiff.'").

Having the largest financial interest in the litigation, and having otherwise made a preliminary showing of satisfying Rule 23's requirements, Mostaco is entitled to a rebuttable presumption that it is the most adequate plaintiff. In the absence of exacting proof to rebut that presumption, the Court appoints Mostaco as lead plaintiff.

In addition, KNS's request for discovery is denied. Before obtaining discovery in this regard, the objecting plaintiff must demonstrate a reasonable basis for a finding "that the presumptively most adequate plaintiff is incapable of representing the class." 15 U.S.C. § 78u–4(a)(3)(B)(iv). As discussed above, Mostaco has provided sufficient information to make the requisite preliminary showing of adequacy. In contrast, KNS has offered no more than speculation in support of its request for discovery. See Khunt, 102 F.Supp.3d at 539. Accordingly, discovery here "will only cause unnecessary delay and expense, likely to provide results that are neither helpful nor likely to change the outcome." Chao Lu v. Jumei Int'l Holding Ltd., No. 14cv9826, 2015 WL 4104570, at *3 (S.D.N.Y. June 22, 2015) (internal quotation marks and citation omitted).

19

### III.     Approval of Lead Counsel

The PSLRA also specifies the procedure to be followed for approving lead counsel in putative class actions brought under federal securities laws.  Under the PSLRA, "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class."  15 U.S.C. § 78u-4(a)(3)(B)(v).  As is evident from the statutory language, "the lead plaintiff's right to select and retain counsel is not absolute – the court retains the power and the duty to supervise counsel selection and counsel retention."  City of Ann Arbor Emps.' Ret. Sys. v. Citigroup Mortg. Loan Tr. Inc., CV 08-1418 (LDW) (ETB), 2009 WL 10709107, at *5 (E.D.N.Y. March 9, 2009) (quoting *In re* Luxottica Grp., S.p.A. Sec. Litig., No. 01-CV-3285, 2004 WL 2370650, at *3 (E.D.N.Y. Oct. 22, 2004)).  However, "[t]he Court generally defers to the plaintiff's choice of counsel, and will only reject the plaintiff's choice . . . if necessary to protect the interests of the class."  Rauch v. Vale S.A., 378 F.Supp.3d 198, 211 (E.D.N.Y. 2019) (internal quotation marks and citation omitted); Brady, 324 F.Supp.3d at 352 ("Courts have correctly found that the PSLRA evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decision as to counsel selection and counsel retention.") (citation and internal quotations omitted).  The PSLRA thus makes clear that courts should interfere with the lead plaintiff's selection and retention of counsel solely to "protect the interests of the class[.]"  See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); Darish, 2021 WL 1026567, at *8; Rauch, 378 F.Supp.3d at 211.

Here, Mostaco has selected The Rosen Law Firm, P.A. as lead counsel and seeks this Court's approval of that selection.  In assessing a plaintiff's selection and retention to represent

20

a purported class, courts give significant weight to counsel's experience. See Rauch, 378 F.Supp.3d at 211. The Rosen Law Firm, P.A. has substantial experience litigating securities fraud class actions. Mostaco has submitted the firm's 52-page resume, providing a detailed description of the educational backgrounds and legal experience of 20 of the attorneys at the firm. See Firm Resume (Feb. 22, 2022), DE #9-4. The firm's resume also lists multiple securities class action suits filed in courts within the Second Circuit, as well as numerous others brought in courts across the nation, in which The Rosen Law Firm, P.A. has served as either lead or co-lead counsel. See id. No purported class members have offered any reason why The Rosen Law Firm, P.A. would be ill-equipped to serve as lead counsel in this case. This Court concludes, as have other courts in this Circuit, that based on the firm's experience, The Rosen Law Firm, P.A. is qualified to serve as lead counsel in securities law cases. See, e.g., Espinal v. DiDi Glob. Inc., 21-CV-5807(LAK), 2021 WL 4754911, at *2 (S.D.N.Y. Oct. 12, 2021); Lavin v. Virgin Galactic Holdings, Inc., 21-CV-3070 (ARR) (TAM), 2021 WL 5409798, at *8 (E.D.N.Y. Sept. 17, 2021); Chitturi, 2020 WL 8225336, at *7.

Accordingly, the Court approves Mostaco's selection of The Rosen Law Firm, P.A. to serve as lead counsel.

## CONCLUSION

For the reasons set forth above, the undersigned magistrate judge appoints Mostaco Corp. as lead plaintiff, and approves The Rosen Law Firm, P.A. as lead counsel. KNS's and David Wrafter's motions for appointment of lead plaintiff and approval of lead counsel are denied as moot.

Any objection to this Memorandum and Order must be filed with the Honorable Diane

Gujarati by April 29, 2022, or will be deemed waived.  The filing of an objection, without

more, will not stay this Court's Order.

**SO ORDERED.**

**Dated:    Brooklyn, New York**
**April 15, 2022**


/s/        *Roanne L. Mann*

**ROANNE L. MANN**
**UNITED STATES MAGISTRATE JUDGE**

22