## The Rosen Law Firm

November 18, 2022

**VIA ECF**

Honorable Nina R. Morrison
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: _Sanchez v. Arrival et al._, No. 1:22-cv-00172-NM-RLM (E.D.N.Y.)

Dear Judge Morrison:

We write on behalf of Plaintiffs[1] in response to Defendant Cowen & Company LLC's ("Cowen") pre-motion letter (ECF No. 65). Plaintiffs incorporate by reference herein their responses to the other Defendants' pre-motion letters as applicable. Plaintiffs' Complaint adequately alleges that Cowen is liable as an underwriter pursuant to Section 11 of the Securities Act of 1933 ("Securities Act").

### Relevant Background

Prior to the Arrival IPO, Arrival hired Cowen as a financial advisor to identify potential SPACs with which it could go public through a business combination, and presented Arrival to CIIG. ¶62. Cowen participated in the Arrival IPO and in the distribution of Arrival securities to investors in multiple ways. In addition to serving as lead financial advisor to Arrival, Cowen participated in due diligence in connection with the Arrival IPO and was the lead placement agent in the PIPE (private investment in public equity) financing, a necessary precondition to the Arrival IPO. ¶¶59; Arrival's Registration Statement defines the "PIPE" as the "private placement pursuant to which the Subscribers will purchase shares of CIIG Class A Common Stock, for a purchase price of $10.00 per share, **_which will be converted into Holdco Ordinary Shares in connection with the Closing_**. ¶¶59, 61-64; Arrival Dec. 15, 2020 F-4 at p. 4 ("Arrival Registration Statement").[2] Pursuant to the PIPE Subscription Agreements, such shares would be registered with the SEC for resale 30 days after closing of the Arrival IPO. Arrival Registration Statement, p. 25. As Arrival's Registration Statement states, the PIPE investments were required to "consummate the Business Combination" and securing that funding was a condition to closing the de-SPAC Business Combination. _Id._ The PIPE financing contributed $400 million, which together with the $260 million in cash from CIIG's trust account, provided $660 million in gross cash proceeds that would "support Arrival's working capital and fuel their global expansion upon going public and listing on the NASDAQ. _Id._ Rather than serving as a behind-the-scenes participant, Cowen features prominently in Arrival's IPO Registration Statement and is mentioned therein 24 times. Cowen would receive no fees in connection with its service as placement agent in the PIPE transaction unless and unless and until Arrival successfully went public through the de-SPAC transaction. ¶62. The CIIG IPO, PIPE financing, and Arrival IPO functioned as a single unitary plan of financing. That Cowen is subject to underwriter liability in connection with its distributional activities is consistent with Section 11 of the Securities Act and Second Circuit law.

### Cowen is an Underwriter

---

[1] All capitalized terms herein have the meanings ascribed to them in the Amended Class Action Complaint (ECF No. 47) ("Complaint"). All emphasis is added.

[2] https://www.sec.gov/Archives/edgar/data/1835059/000119312520317249/d59484df4.htm.

1

Section 11(a)(5) of the Securities Act permits any person who acquires securities pursuant to a false or misleading registration statement to bring a claim against "every underwriter with respect to such security." 15 U.S.C. § 77k(a)(5). Section 2(a)(11) of the Securities Act broadly defines the term "underwriter" to include several classes of actors, including any person who: "has purchased [securities] from an issuer with a view to . . . the[ir] distribution"; without purchasing from an issuer, "offers or sells [securities] for an issuer in connection with . . . the[ir] distribution"; or "participates or has a direct or indirect participation in any such undertaking." 15 U.S.C. § 77b(a)(11). "Any person who performs [any] one of the specified functions in relation to the offering is a statutory underwriter." *Alameda County Emps. Ret. Ass'n v. Ebbers* (*In re WorldCom, Inc. Sec. Litig.*), 308 F. Supp. 2d 338, 344 (S.D.N.Y. 2004) (internal quotation omitted). Because of the underwriter's access to non-public information and its implied favorable recommendation of the security, "prospective investors look to the underwriter - a fact well known to all concerned and especially to the underwriter - to pass on the soundness of the security and the correctness of the registration statement and prospectus." *Chris-Craft Indus., Inc. v. Piper Aircraft Corp.*, 480 F.2d 341, 370 (2d Cir. 1973).

The definition of "underwriter" is to be construed broadly, "in order to 'include as underwriters all persons who might operate as conduits for securities being placed into the hands of the investing public." *SEC v. Lybrand*, 200 F. Supp. 2d 384, 393 (S.D.N.Y. 2002). The question of whether a defendant is a statutory underwriter is to be determined objectively; a defendant can be deemed an underwriter even if that was not its purported subjective intent. *SEC v. Universal Express, Inc.*, 475 F. Supp. 2d 412, 432 (S.D.N.Y. 2007).

## Cowen Played a Necessary and Essential Role in the Distribution of Arrival Shares

"[C]ourts [in this Circuit] have determined whether a defendant was an underwriter by analyzing its role in the underwriting process." *In re Scottish Re Group Sec. Litig.*, 524 F. Supp. 2d 370, 400 (S.D.N.Y. 2007) (internal quotation omitted). When that role is *necessary to or an essential factor* in the distribution of securities, that defendant is an "underwriter." *See SEC v. Kern*, 425 F.3d 143, 152 (2d Cir. 2005) (quoting *SEC v. Chinese Consol. Benevolent Ass'n, Inc.*, 120 F. 2d 738, 741 (2d Cir. 1941)) (the term "underwriter" "include[s] any person who is engaged in steps necessary to the distribution of security issues.' "); *SEC v. N. Am. Research and Dev. Corp.*, 280 F. Supp. 106, 126 (S.D.N.Y. 1968), *aff'd in part and vacated in part on other grounds*, 424 F.2d 63 (2d Cir. 1970) (an underwriter is one whose "conduct . . . amount[s] to performance of a function essential to the entire distribution"); *see also Ingenito v. Bermec Corp.*, 441 F. Supp. 525, 535-36 (S.D.N.Y. 1977) (an underwriter "act[s] on behalf of [an issuer] by paving the way for a public sale").

The Complaint presents numerous factual allegations which much be accepted as true under Rule 8(a) demonstrating that Cowen played a necessary and essential role in the distribution of Arrival securities. As Arrival's financial advisor it identified CIIG, it participated in due diligence related to the Arrival IPO, meeting with Arrival's management to discuss Arrival's partnerships, intellectual property and microfactory approach, evaluated Arrival's financial projections directly with Arrival's CFO Defendant Holbrow and of course served as lead placement agent for the PIPE financing upon which the Arrival IPO was conditioned. ¶62. While Cowen looks at each of these activities in isolation, it ignores the bigger picture: these actions taken together demonstrate that Cowen performed essential functions necessary to the distribution of Arrival shares to the public.

## Cowen is not Exempt from Underwriter Liability Based on its Status as a Private Placement Underwriter

Courts extend liability to private placement underwriters where there is "evidence supporting a finding that the [two transactions] constituted a single transaction, both in the minds of the parties and in terms of the effect on the investing public." *SEC v. Lybrand*, 200 F.Supp.2d 384, 395 (S.D.N.Y. 2002) *aff'd sub nom. S.E.C. v. Kern*, 425 F.3d 143 (2d Cir. 2005). Here, the CIIG IPO,

THE ROSEN LAW FIRM, P.A. ♦ 275 MADISON AVENUE, 40TH FLOOR ♦ NEW YORK, NY 10016 ♦ TEL: (212) 686 - 1060 ♦ FAX: (212) 202 - 3827

PIPE financing, and Arrival IPO "should be viewed through an 'integrated' analysis" because all parties involved were aware that the sole purpose of the CIIG IPO was to create a blank check company that would, with the assistance and participation of Cowen (as well as Barclay and UBS), acquire a target which would merge with CIIG and allow PIPE subscribers (and direct purchasers in the CIIG IPO) to exchange their respective shares on a one to one (1:1) basis for shares in the merged company upon consummation of the Business Combination (i.e. the Arrival IPO) ¶78. Because the PIPE financing was essential to the Arrival IPO, the PIPE financing is integrated with the Arrival IPO. *See, e.g., SEC v. Kik Interactive, Inc.*, 492 F.Supp. 3d 169, 181-82 (S.D.N.Y. 2020) ("Pre-Sale was integrated with TDE [public] sales. One would not have happened without the other, and both were integral to the successful launch of Kin…The two consecutive sales were part of a single plan to introduce Kin…").

Cowen resists this conclusion by citing *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 3d 371 (S.D.N.Y. 2001) and *In re Refco, Inc. Sec. Litig.*, 503 F.Supp. 2d 611, (S.D.N.Y. 2007). Neither case endorses the categorial rule that Cowen urges, that private placements can never form the basis of a Section 11 claim. In *Refco,* plaintiffs alleged no specific facts demonstrating that the bond underwriters participated in preparing the bond registration statement, the bond underwriters bore no risk, and the bond underwriters did not purchase the securities with a view towards distribution. *Refco,* 629-30. Here, Cowen participated in due diligence in connection with the Arrival IPO, would receive no placement fee if the Business Combination was not consummated, and purchased securities knowing that those securities would later be distributed in connection with the Arrival IPO. The Complaint thus "identif[ies] actions taken by the [Cowen] [that were not merely] behind the scenes." *Refco,* 2008 WL 3843343, at *4. Likewise, in *Livent,* the institutions who sold unregistered securities took no part in preparing the subsequent registration statement and were not directly involved in the subsequent exchange of the unregistered securities for registered securities. *Livent*, 431-32.  In any case, there is no requirement that Cowen actually have sold securities in the public offering to be liable under Section 11. *See, e.g., Harden v. Raffensperger, Hughes & Co.*, 65 F.3d 1392, 1400-03 (7th Cir. 1995) (finding that defendant was a statutory underwriter even though it neither purchased nor sold the security). The definition of statutory underwriter also includes "any person who ... participates or has a direct or indirect participation in any such undertaking [to distribute the security]." 15 U.S.C. § 77b(a)(11). Thus, the relevant inquiry is whether Cowen participated in the *distribution* of a security. *Special Situations Fund, III, L.P. v. Cocchiola*, 2007 WL 2261557, at *5 (D.N.J. 2007) ("Nor must a party actually sell shares to the public to be an underwriter under the Securities Act, mere participation in an offering is enough.").

Where, as here, the Complaint alleges that Cowen served as a "conduit [ ] for securities being placed in the hands of the investing public" *Lybrand*, 200 F. Supp. 2d at 293. Cowen is subject to underwriter liability under Section 11. Cowen's arguments in opposition to Plaintiffs' claims are without merit and provide no basis for dismissal.

Respectfully submitted,

THE ROSEN LAW FIRM, P.A.

*/s/Sara Fuks*
Sara Fuks

*Lead Counsel for Plaintiffs*

cc:    all counsel of record (via ECF)

THE ROSEN LAW FIRM, P.A. ♦ 275 MADISON AVENUE, 40TH FLOOR ♦ NEW YORK, NY 10016 ♦ TEL: (212) 686 - 1060 ♦ FAX: (212) 202 - 3827