UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------X **Docket#**
                              : 22-cv-00172(NRM)(PK)
                              :
IN RE ARRIVAL SA SECURITIES   :
LITIGATION                    : U.S. Courthouse
                              : Brooklyn, New York
                              :
                              : January 6, 2023
                              : 11:36 a.m.
------------------------------X

TRANSCRIPT OF CIVIL CAUSE FOR PRE-MOTION HEARING
BEFORE THE HONORABLE PEGGY KUO
UNITED STATES MAGISTRATE JUDGE

**A P P E A R A N C E S:**
**(VIA VIDEO/AUDIO)**

**For the Plaintiff**:        **Sara E. Fuks, Esq.**
                              Rosen Law Firm
                              275 Madison Avenue, 34th Floor
                              New York, NY 10016


**For Arrival SA et al**:     **Susan L. Saltzstein, Esq.**
                              **Robert A. Fumerton, Esq.**
                              **Shaud G. Tavakoli, Esq.**
                              Skadden, Arps, Slate, Meagher
                               & Flom LLP
                              One Manhattan West
                              New York, NY 10001

(Appearances continue on next page)

**Transcription Service**:    **Transcriptions Plus II, Inc.**
                              61 Beatrice Avenue
                              West Islip, New York 11795
                              RL.Transcriptions2@gmail.com

Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

**APPEARANCES CONTINUED**

**For Barclays and UBS**:      **Adam S. Hakki, Esq.**
**Daniel C. Lewis, Esq.**
**Marcella Schaffer, Esq.**
Shearman & Sterling, LLP
599 Lexington Avenue
New York, NY 10022


**For Cowen & Company**:      **Daniel P. Roeser, Esq.**
**Valerie A. Haggans, Esq.**
**Charles Brown, Esq.**
Goodwin Procter LLP
620 Eighth Avenue
New York, NY 10018


**For Horvath, Kinetik,**      **Matthew C. Baltay, Esq.**
**And Duesemon**:      Foley Hoag
155 Seaport Blvd.
Boston, MA 02210


**For Minnick and Cuneo**:      **Michael E. Swartz, Esq.**
**Jeffrey Robertson, Esq.**
Schulte Roth & Zabel LLP
919 Third Avenue
New York, NY 10022

Proceedings

1          THE CLERK:  This is Civil Cause for a Pre-
2   motion hearing by telephone, docket number 22-cv-172,
3   *Miguel A. Sanchez v. Arrival SA, et al*.  Magistrate Judge
4   Peggy Kuo presiding.
5          Will the parties please state their appearances
6   beginning with plaintiff.
7          MS. FUKS:  Good morning, your Honor.  Sara Fuks
8   from the Rosen Law Firm for plaintiff.
9          MS. SALTZSTEIN:  Good morning, your Honor, good
10  morning, counsel.  It's Susan Saltzstein from Skadden
11  Arps on behalf of Arrival and individual defendants
12  Denis Sverdlov, Tim Holbrow, Michael Ableson, Avinash
13  Rugoobur, Peter Cuneo, Kristen O'Hara, Alain Kinsch, and
14  Michael Anatolitis.  And I'm joined by my colleagues Rob
15  Fumerton and Shaud Tavakoli.
16         MR. HAKKI:  Good morning, your Honor.  This is
17  Adam Hakki from Shearman & Sterling.  I'm counsel for
18  defendants Barclay's Capital Inc. and UBS Securities LLC.
19         MR. ROESER:  Good morning, your Honor.  Dan
20  Roeser from Goodwin Procter on behalf of Cowen, and with
21  me are my colleagues Charlie Brown and Valerie Haggans.
22         MR. SWARTZ:  Good morning, your Honor.  Michael
23  Swartz from Schulte Roth & Zabel.  I represent individual
24  defendants Gavin Cuneo and Michael Minnick.  And with me
25  is my colleague Jeff Robertson.

Proceedings

1        MR. BALTAY:  Good morning, your Honor.  This is

2   Matthew Baltay from Foley Hoag appearing on behalf of

3   defendants Kinetic Sarl and individual defendants Giles

4   Duesemon and Csaba Horvath.

5        THE COURT:  All right.  Good morning, everyone.

6   So this is a pre-motion conference for the proposed

7   motions to dismiss that have been filed by various

8   defendants, but because it's the first time that we are

9   meeting, I will also take advantage of this to have a

10  status conference as well as to where things stand.  I

11  know that not everyone is present but I think we can

12  still have a good discussion.

13       I'll note that the answers for various

14  defendants are not due until January 13th but I may be

15  asking, since some of the parties are present, I can

16  still find out whether parties that have not yet answered

17  may also be seeking to file motions to dismiss.  I'm just

18  taking a look at where we are.

19       So Mr. Baltay, you said you're with Foley Hoag.

20  Your co-counsel is Weissman.  Is that right?

21       MR. BALTAY:  That's correct, your Honor.  And I

22  was admitted pro hac vice yesterday and entered my

23  appearance this morning.  Mr. Weissman has a conflict.

24       THE COURT:  Right.  Okay.  No, that's fine.  I

25  just want to make sure that I have you in the right box.

Proceedings

1  So in fact, all the parties are currently represented and

2  present except I will note that CIIG Capital Partners has

3  not made an appearance and Jae Oh also does not appear to

4  be represented.  Is that accurate or is there any kind of

5  error where there should be representation for those two

6  defendants.  Nobody --

7          MS. SALTZSTEIN:  Your Honor, this is Susan

8  Saltzstein from Skadden Arps.  Maybe I can shed a little

9  bit of light.  I do not believe that that entity exists.

10 And while I don't represent nor can I speak for the

11 individual defendant who isn't on the phone, I don't

12 believe that he was properly served.

13          THE COURT:  Okay.  So Ms. Fuks, can you take a

14 look to see if there's a problem with service for Jae Oh?

15 Because if that defendant should part of the case and

16 it's just a service issue, it's something that should be

17 cleared up sooner rather than later.

18          MS. FUKS:  Yes, your Honor.  We have attempted

19 to serve him.  He has not, he still has not been served

20 but we are making attempts to serve him.

21          THE COURT:  Okay.  Thanks.  And also I've heard

22 a representation that CIIG Capital Partners no longer

23 exists.  Do you know if that is the case, Ms. Fuks?

24          MS. FUKS:  So I mean we don't agree that it no

25 longer exists.  There may be some dispute as to which

Proceedings

1  CIIG we're referring to, whether it's CIIG Merger Corp.

2  or CIIG Capital Partners.  So I will look into service.

3  It's my understanding that CIIG Capital Partners was

4  served.

5           THE COURT:  Well, I don't think the issue that

6  was raised was service there.  It was about existence.  I

7  don't know how you can serve an entity that doesn't

8  exist.

9           MS. FUKS:  Yes.

10           THE COURT:  But I just put this out there

11  because I don't want the case to move forward on the

12  wrong track.  I mean if something is the case then that's

13  how the case should move forward but I don't want the

14  case to move forward and then there to be some discovery

15  that it should have gone a different way or that somebody

16  was present who shouldn't have been present, or vice

17  versa.  So to the extent that plaintiffs can figure out

18  what should happen, please get it clarified.  There can

19  remain a dispute but then the dispute should be brought

20  to the Court's attention so that we can resolve it

21  quickly and can get things clarified before we go too far

22  down the line.

23           MS. FUKS:  Understood, your Honor.

24           THE COURT:  And thank you, Ms. Saltzstein, for

25  shedding some light on that.

Proceedings

1        All right.  So then the other issue I wanted to
2   bring up was since there is lead plaintiff's and lead
3   counsel that's already been appointed, the caption of the
4   case still shows that the plaintiff is Mr. Sanchez.
5   Normally the caption at this point gets converted to In
6   re Arrival Securities Litigation or something along those
7   lines.  Ms. Fuks, is it your understanding that that is
8   what should happen here?

9        MS. FUKS:  Yes, that does normally happen.  So
10  with the Court's permission we'll change the caption.

11        THE COURT:  All right.  And I also see that
12  there is a new named plaintiff, Salvatore Furolino
13  (phonetic).  And so you've been filing papers that say
14  there's a lead plaintiff, Mostaco Corp., and a named
15  plaintiff, Salvatore Furolino.  Is that how it's going to
16  be going forward?

17        MS. FUKS:  Yes, yes, that's correct.
18  Ordinarily, when the complaint is amended, often
19  additional named plaintiffs are added.  So those are our
20  two plaintiffs, the lead plaintiff and the named
21  plaintiff, Mr. Furolino.

22        THE COURT:  Okay.  So if you could, please file
23  something on the docket requesting that the caption of
24  the case be changed with the proper name.  It wasn't
25  clear to me whether it should be Arrival or some other

Proceedings

1  name for the securities litigation.  That would be very

2  helpful.

3          MS. FUKS:  Okay, sure.

4          THE COURT:  All right.  And then I will also

5  note, Ms. Saltzstein, that you entered an appearance for

6  some of the defendants who are added in the amended

7  complaint but your co-counsel did not.  I didn't know if

8  that was deliberate or whether Mr. Fumerton and Mr.

9  Tavakoli should also be entering appearances for those

10  additional defendants.  If so, please make sure that the

11  notices of appearances are properly entered.

12          MS. SALTZSTEIN:  We will do that.  Thank you,

13  your Honor.

14          THE COURT:  Okay.  And then I will note in one

15  of the responses to a pre-motion conference request

16  plaintiff has indicated that they will be withdrawing the

17  Section 11 claim against Gavin Cuneo and Mr. Minnick.

18  That's in footnote 2 in docket number 75.  So I just want

19  to confirm that that is the case.

20          MS. FUKS:  That is correct, your Honor.

21          THE COURT:  All right.  So I'll note that that

22  should happen and Section 11 claims against those two

23  defendants will no longer be at issue.  So that takes

24  care of the administrative things I wanted to discuss.

25          This is not an oral argument obviously about

1  merits and the motion to dismiss or any response to it.

2  I would find it useful to discuss whether, if there is an

3  issue of a pleading deficiency, there is any amendment to

4  the complaint that would cure those deficiencies because

5  if there are, that should be done now before the motion

6  to dismiss so that we don't have another round of motions

7  to dismiss or that we can cure things that can be cured

8  at this point.

9          So Ms. Fuks, let me give you the opportunity to

10  discuss whether there's anything you think would benefit

11  from an amendment at this point and if so, we can talk

12  about what that might look like.

13          MS. FUKS:  Your Honor, so we have read all the

14  pre-motion letters obviously and we don't see any

15  pleading deficiencies based on the letters.  We don't

16  intend to amend at this time.

17          THE COURT:  Okay.  All right.  So thank you for

18  that.

19          Then for the non-answering, or the defendants

20  who have not yet answered, Ms. Saltzstein and Mr. Baltay,

21  your deadline is not till next Friday as far as answering

22  or speaking to a motion to dismiss.  Do you know now what

23  you're planning to do?  I'll start with Ms. Saltzstein.

24          MS. SALTZSTEIN:  Yes, your Honor.

25          THE COURT:  Will those two defendants be

Proceedings

1  seeking to file motions to dismiss as well?

2        MS. SALTZSTEIN:  And your Honor, this is Ms.

3  Saltzstein.  So we tried to organize the group given that

4  there are so many parties on the phone and in the case

5  hopefully to the Court's benefit and with a view of

6  efficiency in mind.  And I think we've made some progress

7  that might be useful in terms of streamlining the

8  briefing.

9        Because, as you noted, because of the later

10 service we are on two different tracks and the

11 defendants, including the newly served and those that

12 have yet -- whose time to respond has not yet come due,

13 are willing to make sort of a unified briefing schedule

14 subject to the Court's (indiscernible).  So all of the

15 served defendants are amenable to submitting a brief, or

16 briefs I should say, on the same schedule.  And the

17 proposal that we discussed with plaintiff's counsel is

18 that we'd have opening briefs due on March 9th which

19 would be 45 days from the January 23rd deadline for the

20 pre-motion letters, oppositions on April 24th which would

21 give plaintiff's 45 days, and then have the replies due

22 30 days thereafter on May 24th.  So that is the proposal

23 from the defendants.

24        The plaintiffs asked for a 75 day opposition

25 period.  Our view is that that's a whopping amount of

Proceedings

1    time and that we, you know, we would certainly be

2    amenable to an equal time period, 45 days, 45 days.  But

3    75 days for an opposition seemed like a lot to us.  And,

4    you know, these cases typically can be, you know, 45, 45,

5    30 is a typical time period.  We thought that that would

6    be, you know, an efficient way given that everybody's

7    going to be on the same schedule if the Court views that

8    as being a desirable outcome.

9          THE COURT:  Right.  Okay.  And are you

10   continuing to represent some defendants who have already

11   answered as well as the newly served defendants?  Will

12   you be filing one brief on behalf of that whole group or

13   will they be two briefs from you?

14         MS. SALTZSTEIN:  For the parties that I

15   represent, your Honor, we will be filing one brief.  For

16   the parties that are separately represented, everyone

17   will file their own briefs and we have a proposal with

18   respect to that as well again with the view of just, you

19   know, dealing with this in an efficient way.  And

20   basically, your Honor, our suggestion is that we abide by

21   this Court's 25 page page limit but be allowed to divide

22   the pages between and among the defendants, you know, in

23   a way that we think is best.

24         THE COURT:  Okay.  So can you explain what you

25   mean by that, among the defendants?

Proceedings

1      MS. SALTZSTEIN:  So in other words, if one

2  party has 25 pages but uses 20, another one of the

3  defendants can take those five pages.  So for example --

4      THE COURT:  Okay.

5      MS. SALTZSTEIN:  You know, so for my clients,

6  your Honor, because there will be I think arguments that

7  we will make that will be really, you know, arguments

8  that others will likely adopt or incorporate, we may need

9  additional pages.  So that was a way of addressing that

10 issue.  And amongst ourselves, we can divide up how those

11 pages get allocated.

12      And then we'd suggest that the plaintiff be

13 given -- you know, if let's say we don't use all those

14 pages, we submit briefs that total let's say 70 pages,

15 that the plaintiffs would get 70 pages for their

16 opposition.

17      THE COURT:  Okay.  So let me just again try to

18 understand.  I had thought that each counsel, each firm

19 appearing for its group of defendants would file a brief

20 for each group and that brief would be 25 pages.  But

21 you're saying you're trying to allocate it differently?

22      MS. SALTZSTEIN:  Yeah, your Honor, that's

23 right.  So in other words, instead of just -- we could do

24 it differently, but the thought was the easy way to do it

25 is if everyone gets their 25 pages but doesn't use those

Proceedings

1   full 25, that it could be allocated to another group of

2   defendants just so that we don't, you know, that's just

3   an easy way of doing it.  So if someone uses 20 pages,

4   they have an additional five, they can allocate that to

5   another defendant group.

6          And as I said, your Honor, that's because --

7   you know, the reason we thought about it in those terms

8   is we're likely on behalf of Arrival going to make

9   arguments that will be applicable to the group, or at

10  least other folks who are separately represented.  Rather

11  than try to separately ask for a different amount of

12  pages, we think we can live within the Court's 25 page

13  limit if we can divide it as we see fit.

14          THE COURT:  Right.

15          MR. SWARTZ:  It's Michael Swartz, your Honor.

16  If I may?  Just to echo what Ms. Saltzstein is saying

17  that for example for Mr. Cuneo and Mr. Minnick on the

18  Section 14 claim, it may be more efficient to allocate

19  some of those pages to Arrival so that it's all in one

20  place so that you don't have to piece things together.

21  We're obviously going to work together to be as efficient

22  as possible.

23          THE COURT:  Right.  Okay.  So what I'm hearing,

24  since I'm looking at five law firms, that if each firm on

25  behalf of its group of clients is submitting a 25-page

Proceedings

1  brief, that's 125 pages total.  And you're saying you

2  would like the option of allocating those among the five

3  different firms.

4          MS. SALTZSTEIN:  Exactly, exactly, your Honor.

5          THE COURT:  Okay.  All right.  And Ms. Fuks,

6  let me hear your proposal.

7          MS. FUKS:  Yes.  So I mean normally a briefing

8  schedule in a case where you have one group of defendants

9  might be 45, 45 or 60, 60 is something that we're more

10  accustomed to.  So you know, we're going to be getting

11  five different briefs from five separately represented

12  parties from five different law firms and we will have 45

13  days to respond to five briefs as opposed to the norm of

14  one or maybe two briefs.

15          Now, I can understand if the parties wanted to

16  file an omnibus brief of say 50 pages, then 45 days would

17  be a reasonable amount of time to respond.  But I think

18  asking for 75 days is certainly reasonable given the

19  circumstances.

20          As far as the swapping of pages, it doesn't

21  quite seem right to me.  For example, certain parties may

22  have very limited arguments.  And to allocate their pages

23  to let's say Arrival so that Arrival and the executive

24  defendants let's say they can submit a 70-page brief

25  whereas you have one claim, one simple Section 14

1  negligence claim against Gavin Cuneo and Michael Minnick,

2  which might take up ten pages, it just doesn't seem

3  appropriate to allow swapping of pages like that.  It

4  would seem to extend the page limits for certain, in

5  favor of certain defendants.

6        THE COURT:  So Ms. Fuks, can you give me your

7  alternate dates for the briefing scheduling?

8        MS. FUKS:  So the alternate date would be March

9  9th.  It's the date for the defendants to file their

10 motions.  And then I believe 75 days later, I believe

11 that's May 24th but let me clarify that.  I'm sorry, so

12 that would be April --

13        THE COURT:  May 9th will get you to 60 days.

14        MS. FUKS:  Yeah.

15        THE COURT:  So if you're looking for 75, it

16 looks like it would be May 24.

17        MS. FUKS:  75 would be May 23rd.

18        THE COURT:  Okay.  And then 30 days to respond

19 would be June 22nd.  All right.  So what makes -- I tend

20 to agree that having to respond to so many briefs,

21 opening briefs, you should get some more time.  I saw

22 based on the pre-motion conference request that there

23 will be some overlap, but there are some unique issues.

24 For example, the underwriters have unique issues that

25 will not have been raised by the Arrival defendants.  And

Proceedings

1   so I can give you additional days that will be fair so

2   that you can address everything.  And what you're asking

3   for is an extra month.  So I think under the

4   circumstances that looks fine.  So I will adopt the

5   plaintiff's proposed briefing schedule of March 9th, May

6   23rd, and June 22nd.

7            Please follow the bundling rule so that you are

8   exchanging the papers but not filing until June 22nd when

9   the reply is served.  So the reply will be served and

10  then everything will be filed at that time.  It doesn't

11  matter who does the filing, just try to file it in the

12  proper order so that it's easier for the Court to follow

13  what is being filed in response to what.

14           Then in terms of the allocation of the pages, I

15  do think that it will get -- I appreciate that there are

16  extra pages that if one party doesn't want to use they

17  want to give to the other party, but I think that

18  there -- if left alone, you could end up with a brief

19  that is excessively long and unnecessarily so.  So I

20  think, you know, rules do permit the parties to request

21  additional pages.  And so if any party wants to request

22  additional pages, they can do so and then on a case-by-

23  case basis.  Since there are only five briefs, I can look

24  at it and consider whether to grant those requests beyond

25  the 25 pages.  All right?  So Ms. Saltzstein, do you

Proceedings

1   already know that you want to have extra pages or --

2             MS. SALTZSTEIN:  Yes.  Yes, your Honor.  We

3   will need additional pages and I would think 45 pages

4   should do the trick.  We would view that efficient and

5   shorter is better, so we will endeavor to use those pages

6   wisely.

7             THE COURT:  Right.  And it also seems like the

8   other defendants have been relying on arguments that

9   Arrival has been making, so it does make sense.  If I

10  give you those 45 pages that the other defendants are

11  also -- that you're sharing your case with the other

12  defendants so that they can -- their briefs will be

13  shorter and not need to repeat what you've said.  All

14  right?

15            MS. SALTZSTEIN:  Exactly.

16            THE COURT:  I'll grant you that extension for

17  45 pages.

18            MS. SALTZSTEIN:  Thank you, your Honor.

19            THE COURT:  Ms. Fuks, I anticipate you'll want

20  more pages too but I'll let you make that request later.

21            MS. FUKS:  Okay.  Thank you, your Honor.

22            THE COURT:  Okay.  Because once you see what

23  you're up against then you might want more pages and I'll

24  certainly consider it.

25            MS. FUKS:  Thank you.

Proceedings

1    THE COURT:  All right.  Great.  So I think we

2  have a plan and I'll grant the parties who have not yet

3  answered leave to join in this briefing schedule so that

4  you both -- I will treat this as if you had already asked

5  for permission to file a motion to dismiss so that

6  you'll, by virtue of participation in today's conference,

7  have met your January 13th deadline as well as your pre-

8  motion conference deadline so that you don't have to

9  worry about those interim dates, just move forward with

10  this schedule, this briefing schedule.

11    Okay.  So I think that takes care of the things

12  that I wanted to discuss.  Let me give each counsel an

13  opportunity to bring up any other issues they want to

14  discuss today.  So Ms. Fuks, is there anything further to

15  discuss?

16    MS. FUKS:  So I just wanted to clarify does

17  that mean that the newly served parties I'll call them

18  will not be filing pre-motion letters?

19    THE COURT:  I was excusing them from doing

20  that.

21    MS. FUKS:  Okay.  I understand, your Honor.  I

22  just wanted to --

23    THE COURT:  Yes.  Because I understood that the

24  arguments are -- well actually, let me check.  Mr.

25  Baltay, are you going to be bringing up any issues that

Proceedings

1   are unique to your clients that have not been raised by

2   any of the other defendants?

3          MR. BALTAY:  Your Honor, they're going to

4   largely mirror those although we do have a personal

5   jurisdiction defense as to Kinetik which is located over

6   in Europe.  But I'm happy to present that however the

7   Court would like in a letter or pursuant just to the

8   brief.

9          THE COURT:  Right.  So I think that issue is

10  fairly straightforward and you'll get more information in

11  the briefing rather than require a separate pre-motion

12  conference letter that gives a preview.  You agree?

13         MS. FUKS:  Oh absolutely.  Plaintiffs are fine

14  with that.  Thank you, your Honor.

15         THE COURT:  Okay.  Good.  All right.  So yes,

16  the answer is yes.  There's no need for a pre-motion

17  conference letter or motion, sorry, or conference.  The

18  parties can skip those two steps and move straight to the

19  briefing schedule.

20         All right.  So Ms. Saltzstein, do you have

21  anything?

22         MS. SALTZSTEIN:  Nothing further, your Honor.

23  Thank you.

24         THE COURT:  Mr. Hakki?

25         MR. HAKKI:  Nothing for me, your Honor.  Thank

Proceedings

1  you very much.

2          THE COURT:  Mr. Roeser?

3          MR. ROESER:  Nothing further, your Honor.

4  Thanks very much.

5          THE COURT:  Mr. Baltay?

6          MR. BALTAY:  Nothing further, your Honor.

7  Thank you.

8          THE COURT:  Okay.  And Mr. Swartz?

9          MR. SWARTZ:  Nothing further, your Honor.

10  Thank you.

11          THE COURT:  All right.  Great.  So the motions

12  to dismiss have been referred to me and so I look forward

13  to everybody's briefing.  If the parties want an oral

14  argument, I will consider it.  Just let me know what your

15  thoughts are on that issue.  So great.  Have a good

16  weekend, everyone.

17          MS. SALTZSTEIN:  Thank you, your Honor.  You

18  too.  Take care.

19          MS. FUKS:  Thank you very much, your Honor.

20          MR. SWARTZ:  Bye, everybody.

21                  (Matter concluded)

22                        -oOo-

23

24

25

# C E R T I F I C A T E

I, MARY GRECO, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **17th** day of **January**, 2023.

*Mary Greco*

Transcriptions Plus II, Inc.