**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Arrival SA, et al. Securities Litigation | **CASE No.: 1:22-cv-00172-NRM-PK**<br><br><br>CLASS ACTION |

**PLAINTIFFS' SUR-REPLY IN RESPONSE TO THE ARRIVAL DEFENDANTS'
REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' SECOND
<u>AMENDED CLASS ACTION COMPLAINT</u>**

0

*Introduction*

The Arrival Defendants[1] ("Defendants") assert that a recent district court opinion interpreting *Frutarom* forecloses claims by SPAC investors that are based on statements made before a SPAC merger closes.[2] *In re CarLotz, Inc. Sec. Litig.*, 2023 WL 2744064, at *1 (S.D.N.Y. Mar. 31, 2023) (interpreting *Menora Mivtachim Ins. Ltd. v. Frutarom Indus. Ltd.*, 54 F.4th 82 (2d Cir. 2022) ("*Frutarom II*")). Defendants are incorrect. *Frutarom II* reiterates controlling law that a cause of action under §10(b) of the Securities Exchange Act of 1934 is available to plaintiffs who "dealt in the **_security_** to which the prospectus, representation, or omission relates." *Id.* at 85 (quoting *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 747 (1975)).

The Complaint alleges that various Defendants issued various false and misleading statements to investors who purchased "Arrival Securities" both before and after the de-SPAC Business Combination closed. But regardless of whether investors purchased: 1) publicly traded securities of Arrival prior to the Business Combination, and thus purchased "Arrival Securities" when they were shares of CIIG (and then exchanged them for shares in the combined company), *or* 2) purchased Arrival Securities after the Business Combination; *all of* the Arrival Defendants' statements about *all* of the securities at issue, related, essentially, to one thing: the combined Company's business prospects.

The Complaint alleges that all Class Period investors (whether they purchased CIIG common stock prior to the official Business Combination or purchased Arrival common stock after the

---

[1] All capitalized terms have the meanings ascribed to them in Plaintiffs' Second Amended Class Action Complaint ("Complaint") and the glossary contained in Plaintiffs' Memorandum of Law in Opposition to the Arrival Defendants' Motion to Dismiss unless otherwise stated. Importantly, as stated in the glossary, the Arrival Defendants includes CIIG, (the SPAC) and Peter Cuneo.

[2] *See* Reply Memorandum of Law in Further Support of Certain Defendants' Motion to Dismiss the Second Amended Class Action Complaint, Dkt. No. 107-37 ("Reply") at p. 29. *See also* Arrival Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion to Dismiss ("Opp.") Dkt. No. 107-1 at fn. 24 (asserting that claims on behalf of CIIG shareholders prior to the Business Combination fail "because those individuals did not purchase Arrival shares.")

Business Combination) "dealt in the **security**" that the false and misleading statements CIIG, P. Cuneo, and Arrival and its officers and directors made in CIIG's and Arrival's pre and post Business Combination SEC filings "concern or relate." Consistent with *Frutarom*, all of the Arrival Defendants' alleged misrepresentations related to the "security" in which Class Period investors dealt because all of the alleged misstatements "concern or relate" to the combined Company's business prospects. Accordingly, *all of* the Arrival Defendants are liable for their misstatements pursuant to black letter law, irrespective of *Frutarom* and *Carlotz*, both of which are distinguishable.

Here, Defendants made false statements prior to the close of the Business Combination in CIIG and Arrival Group's SEC filings and press releases that directly relate to investors'- like Plaintiff Fiorellino who purchased CIIG common stock prior to the close of the Business Combination- decision to approve the Business Combination between CIIG and Arrival. These Class Period investors have standing to sue CIIG, Arrival, and the Individual Defendants who made the alleged false statements because these statements "concern or relate" to the "security at issue" whose value is directly tied to the combined company's business prospects. Likewise, Class Period investors who purchased shares of Arrival Securities after the Business Combination closed have standing to sue Defendants for the statements they made prior to the-Business Combination because those statements also "relate[]" to the securities they purchased. 421 U.S. at 747.[3]

To be sure, the Second Circuit withdrew the original *Frutarom* opinion ("*Frutarom I*") precisely to prevent the result in *CarLotz*. In *Frutarom II* the Second Circuit clarified that challenged statements need not be specifically about the *issuer* of a security to give rise to standing; rather, the statements need only relate to the *securities* purchased. *Frutarom II*, 54 F.4th at 84

---

[3] After the Business Combination closed the Combined Company and the Executive Defendants continued to make false statements. Defendants do not assert that *Frutarom* or *CarLotz* in any way implicates those statements.

(interpreting *Blue Chip Stamps* as conferring standing upon "purchasers or sellers of securities about which a misstatement was made."). Accordingly, the *CarLotz* opinion's focus on whether the challenged statements were about the *issuer* of the securities is misplaced.

### A. All the Pre-Business Combination Challenged Statements are Actionable under the Purchaser-Seller Rule and *Frutarom*

The Complaint alleges that Defendants (CIIG, Arrival, and certain Individual Defendants) made false statements prior to the close of the Business Combination. These "pre-merger" statements include: 1) CIIG's November 18, 2020 8-K, CIIG and Arrival's conference call and Investor Presentation/Prospectus (*e.g.* ¶¶223-236) (attached as exhibits to CIIG's November 18, 2020 8-K) and 2) the December (and February) Registration Statements and CIIG Proxy Statement/Prospectus incorporated by reference therein (*e.g.* ¶¶4, 59, 63, 240-255).

*Frutarom II* holds that "*Blue Chip Stamps*…continues to govern our analysis of statutory standing for Section 10(b) claims." 54 F.4th at 86. Referred to as the "purchaser-seller" rule, *Blue Chip Stamps* held that to allege standing for §10(b) claims, investors must have "dealt in the security to which the prospectus…relates." 421 U.S. at 747. Here, Defendants' statements prior to the close of the Business Combination relate to CIIG common stock and securities in the combined company (Arrival SA) after the Business Combination.[4] For example, the November 18, 2020 Prospectus (attached to CIIG's 8-K announcing the Proposed Business Combination) stated that it was prepared to "assist interested parties in making their own evaluation with respect to a potential a potential business combination" between CIIG and Arrival.[5] Defendants' pre-Business

---

[4] Arrival Defendants incorrectly assert that Plaintiffs do not bring Section 10(b) claims on behalf of CIIG shareholders before the Business Combination. As Plaintiffs explained in their opposition, this semantic argument ignores the allegations in the Complaint, that Plaintiffs Fiorellino purchased CIIG common stock prior to the Business Combination and exchanged these shares for Arrival common stock after the Business Combination closed. ¶42. The first paragraph of the Complaint references "Arrival Securities" ¶1 but in context, the Complaint's allegations make clear that "Arrival Securities" refers to CIIG common stock (pre-merger shares) and Arrival common stock (post-merger shares).

[5] https://www.sec.gov/Archives/edgar/data/1789760/000119312520296650/d91730dex992.htm

Combination statements also relate to the Arrival securities purchased after the Business Combination closed. For example, the Prospectus explicitly states: "this document, which forms part of a registration statement on Form F-4 with the [SEC] by Holdco,[6] constitutes a prospectus of Holdco under Section 5 of the Securities Act, *with respect to Holdco Ordinary Shares to be issued to the CIIG stockholders if the Business Combination described herein is consummated*."[7]

## B.  *Frutarom I* Was Amended to Prevent the Result in *Carlotz*

*Frutarom I*, the panel's earlier opinion, required that "plaintiffs [] bought or sold *a security of the issuer about which a misstatement was made* in order to have standing to sue under Section 10(b)." *Menora Mivtachim Ins. Ltd. v. Frutarom Indus. Ltd.*, Case No. 21-1076, Dkt. No. 121-1 (2d Cir. Sept. 30, 2022) ("Original Opinion") at 8 (emphasis added). When the plaintiffs sought a rehearing *en banc*, a group of securities laws scholars filed an amicus brief ("Securities Scholars Brief"). They explained that the language that the plaintiffs must have bought "a security *of the issuer* about which a misstatement was made" could have serious unintended consequences, including with respect to SPACs like Arrival:

> [A] misrepresentation may "relate" to important classes of securities that are not "issued" by the company "about which a misstatement was made" but whose value is nonetheless a function of that company's prospects. Examples include options and other derivatives, *securities of SPACs* …"

*See* Declaration of Sara Fuks ("Fuks Decl."), Ex. 2 (Securities Scholars Brief), at 6. The Securities Scholars Brief explained the implications: if the Original Opinion *did* release all SPACs, it would

---

[6] According to the Registration Statement and Proxy Statement, "Holdco" means "Arrival Group, a joint stock company governed by the laws of the Grand Duchy of Luxembourg…"

[7] Registration Statement also stated that forward-looking statements may include "the Combined Company's financial performance following the Business Combination." https://www.sec.gov/Archives/edgar/data/1835059/000119312520317249/d59484df4.htm at p. 62.

4

be issuing get-out-of-jail free cards to more than half of the new public listings in 2020. *Id.* at 9. After the Securities Scholars filed their brief, the panel withdrew the Original Opinion. *Frutarom II* replaced the references to "the issuer" with "the security." *See* Fuks Decl., Ex. 1 (redline showing changes from *Frutarom I* to *Frutarom II*). The Second Circuit then denied rehearing *en banc*.

Frutarom II preserves standing for investors who did not purchase the issuer's security. The result here is that post-merger Arrival investors, who did not purchase CIIG (*i.e.* the pre-merger issuer's) shares, nonetheless have standing to pursue claims for pre-merger statements because those statements relate to the securities they purchased. And because *Frutarom II* replaces references to "the issuer" with "the security" it removes any doubt that investors who purchased SPAC securities before the merger have standing to sue over statements that nominally concern the target. After Defendants announced the Business Combination, a share of CIIG stock was simply the equivalent of the right to receive a share of Arrival after the Business Combination closed. And while post-Business Combination investors did not purchase securities of the *issuer* of the securities at the time misleading pre-merger misstatements were made, they have standing because those statements are "about" and "relate to" securities they purchased after the Business Combination. Under *Frutarom II* and *Blue Chip Stamps*, the focus of *CarLotz* on whether the challenged statements are about the "issuer" of the securities purchased is wholly misplaced.

## C. *Frutarom II and CarLotz are Distinguishable on their Facts*

In *Frutarom II*, the plaintiffs bought shares of International Flavors & Fragrances, Inc. ("Acquiror") after it had announced plans to acquire Frutarom Industries Ltd. ("Target"). 54 F.4th at 84. The Target was a large company whose shares traded on the London Stock Exchange. *Menora Mivtachim Ins. Ltd. v. Int'l Flavors & Fragrances Inc.*, 2021 WL 1199035, *2 (S.D.N.Y.

Mar. 30, 2021). As a result, the Target made regular public reports about its operations for its own shareholders' benefit. The plaintiffs, purchasers of shares in the Acquiror, sued the Target because *its* statements to *its* shareholders were incorporated into certain statements the Acquiror made to its own shareholders. The lower court dismissed the §10(b) claim against the Acquiror not on standing grounds, but for failure to allege scienter. *Id*. at *29-*30 (failure to plead scienter as to Acquiror and dismissing for lack of standing as to Target). The plaintiffs pursued their appeal only against the Target. Thus, in *Frutarom II*, most of the statements the plaintiffs challenged were addressed to the Target's existing public shareholders. When they were speaking to the Target's investors, the Targets' officers' statements were naturally about the Target, and the Target alone. Indeed, the Target needed *its* shareholders to approve the merger; the Acquiror did not. The Second Circuit found that the Acquiror's incidental use of the Target's statements did not give the Acquiror's shareholders standing to sue the Target for statements that the Target made to its own shareholders.

In contrast, here, the pre-merger documents containing the challenged statements were addressed to CIIG shareholders. Likewise, the documents containing the challenged statements were issued for the express purpose of creating publicly traded post-merger Arrival shares. When Defendants made statements prior to the Business Combination they had two audiences: CIIG investors, whose votes they were soliciting, and investors considering whether to buy post-merger Arrival shares once the merger closed. Similarly, after Defendants announced the Business Combination, CIIG securities related to only one substantive matter: Arrival and its EVs. Moreover, in *Frutarom*, the Acquiror was itself a large publicly-traded company; the acquisition would comprise only a small portion of its total business. The Acquiror's investors would not pay undue attention to the Target's statements. In contrast, CIIG's  sole business was its combination

6

with Arrival. There was nothing else for investors to consider. Thus, unlike in *Frutarom II*, pre-merger statements about Arrival were also about CIIG.

In *CarLotz*, the plaintiffs apparently conceded that the pre-merger statements were about pre-merger CarLotz (the target) and no other company. *CarLotz*, 2023 WL 2744064, at *4. Instead, they argued incorrectly that there was no difference between pre-merger CarLotz and post-merger CarLotz. The court rejected their argument because it did not address *Frutarom* on its terms. The *CarLotz* plaintiffs raised the immense public policy costs that the defendants' argument would effectively give SPACs a license to lie. Though it seemed disturbed, the court read the Second Circuit's opinion as having rejected the concerns. The court was wrong. As set forth above, the Second Circuit withdrew *Frutarom I* precisely because it might deprive SPAC investors (among others) of a cause of action. The *CarLotz* court also credited the concurrence's assertion that the majority was making policy rather than following existing law. The conclusion was unwarranted; not only did the majority disagree that it was making new policy, but not even the concurrence suggested that the majority was making new policy *about SPACs*.

Accordingly, Plaintiffs respectfully request that the Court reject Defendants' reliance on *Frutarom II* and *Carlotz* and deny Defendants' motion to dismiss in its entirety.

Dated:  July 11, 2023                                    Respectfully submitted,


                                                         /s/ Sara Fuks
                                                         Sara Fuks
                                                         Laurence Rosen
                                                         Phillip Kim
                                                         **THE ROSEN LAW FIRM, P.A.**
                                                         275 Madison Avenue, 40th Floor
                                                         New York, NY 10016
                                                         Tel: (212) 686-1060

sfuks@rosenlegal.com
lrosen@rosenlegal.com
pkim@rosenlegal.com

*Lead Counsel for Plaintiffs and the Putative Class*

8