# EXHIBIT 1

21-1076
*Menora Mivtachim Ins. Ltd. v. Frutarom Indus. Ltd.*

# United States Court of Appeals
# for the Second Circuit

August Term 2021
Argued: February 10, 2022
Decided: September 30, 2022
Amended: November 30, 2022

No. 21-1076

MENORA MIVTACHIM INSURANCE LTD., MENORA MIVTACHIM AND THE
FEDERATION OF ENGINEERS PROVIDENT FUND MANAGEMENT LTD.,
CLAL INSURANCE COMPANY LTD., MENORA MIVTACHIM PENSIONS
AND GEMEL LTD., CLAL PENSION AND PROVIDENT LTD., ATUDOT
PENSION FUND FOR EMPLOYEES AND INDEPENDENT WORKERS,

*Plaintiffs-Appellants,*

v.

FRUTAROM INDUSTRIES LTD., ORI YEHUDAI, ARI ROSENTHAL, ALON
GRANOT, GUY GILL,

*Defendants-Appellees.[1]*

on Appeal from the united states District court
for the Southern District of New York
Before: PARK, NARDINI, and PEREZ, *Circuit Judges.*

International Flavors & Fragrances Inc. ("IFF"), a U.S.-based seller of

---

1 The Clerk of Court is respectfully directed to amend the caption
accordingly.

flavoring and fragrance products, acquired Frutarom Industries Ltd. ("Frutarom"), an Israeli firm in the same industry. Leading up to the merger, Frutarom allegedly made material misstatements about its compliance with anti-bribery laws and the source of its business growth. Plaintiffs, who bought stock in IFF, sued Frutarom, alleging that those misstatements violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder. We conclude that Plaintiffs lack statutory standing to sue. Under the purchaser-seller rule, standing to bring a claim under Section 10(b) is limited to purchasers or sellers of securities ~~issued by the company~~ about which a misstatement was made. *See Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723 (1975). Plaintiffs here lack standing to sue based on alleged misstatements ~~that~~about Frutarom ~~made about itself~~ because they never bought or sold shares of Frutarom. **AFFIRMED**.

Judge Perez concurs in a separate opinion.

> JEREMY A. LIEBERMAN (Emma Gilmore, Marc I. Gross, Villi A. Shteyn, *on the brief),* Pomerantz LLP, New York, NY, *for Plaintiffs-Appellants.*
>
> ROGER A. COOPER (Lisa Vicens, Thomas S. Kessler, *on the brief),* Cleary Gottlieb Steen & Hamilton LLP, New York, NY, *for Defendant-Appellee Frutarom Industries Ltd.*
>
> BRUCE G. VANYO, Katten Muchin Rosenman LLP, New York, NY (Jonathan A. Rotenberg, Thomas M. Artaki, Katten Muchin Rosenman LLP, New York, NY; Eric T. Werlinger, Katten Muchin Rosenman LLP, Washington, DC, *on the brief), for Defendants-Appellees Ori Yehudai, Ari Rosenthal, Alon Granot, and Guy Gill.*

21-1076
*Menora Mivtachim Ins. Ltd. v. Frutarom Indus. Ltd.*

PARK, *Circuit Judge:*

International Flavors & Fragrances Inc. ("IFF"), a U.S.-based seller of

flavoring and fragrance products, acquired Frutarom Industries Ltd. ("Frutarom"), an Israeli firm in the same industry. Leading up to the merger, Frutarom allegedly made material misstatements about its compliance with anti-bribery laws and the source of its business growth. Plaintiffs, who bought stock in IFF, sued Frutarom, alleging that those misstatements violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder. We conclude that Plaintiffs lack statutory standing to sue. Under the purchaser-seller rule, standing to bring a claim under Section 10(b) is limited to purchasers or sellers of securities ~~issued by the company~~ about which a misstatement was made. *See Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723 (1975). Plaintiffs here lack standing to sue based on alleged misstatements ~~that~~about Frutarom ~~made about itself~~ because they never bought or sold shares of Frutarom. We thus affirm the district court's dismissal of the complaint.

## I.   BACKGROUND

A.    Factual Background[2 3]

   Plaintiffs are a putative class of investors who acquired IFF securities between May 7, 2018 and August 12, 2019. They allege

---

   [2] The following facts are taken from Plaintiffs' Amended Complaint, Joint App'x at 20-102. In reviewing the district court's decision on a motion to dismiss, we accept these facts as true and draw all reasonable inferences in Plaintiffs' favor. *See Lively v. WAFRA Inv. Advisory Grp., Inc.,* 6 F.4th 293, 299 n.1 (2d Cir. 2021).

   ~~Joint App'x at 20-102. In reviewing the district court's decision on a~~

Case 21-7076, Document 121-1, 09/30/2022, 3394251, Page 4 of 15

that from 2002 to 2018, Frutarom's executives engaged in a "long-running bribery scheme" by which they bribed key employees of important clients in order to "generate continued and increased business with the customer[s]." Compl. ^ 10, 66. They also bribed customs officials and quality assurance officials in Russia and Ukraine in order to import Frutarom products into those countries and to pass local certifications of product fitness.

On May 7, 2018, Frutarom and IFF announced an anticipated merger. Plaintiffs allege that leading up to the consummation of the merger, Frutarom made materially misleading statements about its compliance with anti-bribery laws and the sources of its business growth, most of which were incorporated into IFF's Form S-4 Registration Statement. For instance, Plaintiffs allege that Frutarom falsely stated that since December 31, 2014, Frutarom had not "violated the [Foreign Corrupt Practices Act], the U.K. Bribery Act 2010, the [Organisation for Economic Co-operation and Development] Convention on Combating Bribery of Foreign Public Officials in International Business Transactions or any other applicable Law relating to anti-corruption or anti-bribery." *Id.* ^ 146. Plaintiffs also allege that Frutarom misled investors by attributing its financial growth in 2016 and 2017 to factors such as "organic growth," "acquisitions," and "positive currency effects" while failing to mention growth due to the bribery scheme. *Id.* ^ 136-37.

IFF's acquisition of Frutarom closed in October 2018, after which Frutarom became a wholly-owned subsidiary of IFF. On [4-5]

August 5, 2019, IFF acknowledged that Frutarom had "made improper payments to representatives of a number of customers" in Russia and Ukraine.

---

motion to dismiss, we accept these facts as true and draw all reasonable inferences in Plaintiffs' favor. *See Lively v. WAFRA Inv. Advisory Grp., Inc.,* 5 F.4th 293, 299 n.1 (2d Cir. 2021).

*Id.* ^ 211. The following day, IFF's share price dropped nearly 16%.

B.    Procedural History

Plaintiffs sued IFF and two of its officers as well as Frutarom and five of its officers. Plaintiffs alleged that Defendants' materially misleading misstatements violated Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b), 78t(a); and Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. § 240.10b-5.[6]

The district court granted Defendants' motion to dismiss for failure to state a claim, finding that the complaint "fail[ed] to allege with the requisite particularity that Frutarom's misconduct continued into the Class Period" and concluding that, in any case, the allegedly false statements and omissions of material fact were not actionable or material. Spec. App'x at 23-24. The district court also concluded that "plaintiffs lack statutory standing under Section 10(b) to bring claims against the Frutarom defendants for statements made about Frutarom." *Id.* at 78. Plaintiffs pursue their appeal against only Frutarom and four of its officers. *See* Appellants' Br. at 3.

## II.    DISCUSSION

A.    A. Standard of Review

"We review a district court's dismissal of a complaint under [Federal Rule of Civil Procedure] 12(b)(6) de novo." *Tongue v. Sanofi,* 816 F.3d 199, 209 (2d Cir. 2016).

B.    B. The Purchaser-Seller Rule

Neither Section 10(b) of the Exchange Act nor Rule 10b-5 provides an express private right of action, but the Supreme Court has long held that

_____

[6] Plaintiffs also asserted a claim under the Israeli Securities Law of 1968. The district court declined to exercise supplemental jurisdiction over the claim, and Plaintiffs do not challenge that decision on appeal.

one is implied. *See, e.g., Superintendent of Ins. v. Bankers Life & Cas. Co.,* 404 U.S. 6, 13 n.9 (1971). Recognizing the advantages of limitations to this judicially created private right of action, the Court in *Blue Chip Stamps* adopted the rule from *Birnbaum v. Newport Steel Corp.,* 193 F.2d 461 (2d Cir. 1952), which limited the class of plaintiffs who could sue under Rule 10b-5 to those who purchased or sold the securities ~~of an issuer~~ about which a material misstatement was made. *See Blue Chip Stamps,* 421 U.S. at 730 (noting that the *Birnbaum* rule limited "the plaintiff class for purposes of a private damage action under § 10(b) and Rule 10b-5 . . . to actual purchasers and sellers of securities"); *see also id.* at 742 (explaining that the *Birnbaum* rule "permits exclusion prior to trial of those plaintiffs who were not themselves purchasers or sellers of the stock in question"); *id.* at 747 ("The virtue of the *Birnbaum* rule, simply stated, in this situation, is that it limits the class of plaintiffs to those who have at least dealt in the security to which the prospectus, representation, or omission relates.").

The Court observed in *Blue Chip Stamps* that "[a]vailable evidence from the texts of the [Securities Act of 1933 and the Exchange

Act] . . . supports the result reached by the *Birnbaum* court."~~37~~ *Id.* at ~~8~~ 733. It also noted the fact that the purchaser-seller rule had gained widespread acceptance across the country and that Congress had "fail[ed] to reject *Birnbaum*'s reasonable interpretation of the wording of § 10(b)" despite two attempts to amend the statute. *Id.* at 732-33; *see also id.* at 731-32 ("[V]irtually all lower federal courts facing the issue in the hundreds of reported cases presenting this question over the past quarter century have reaffirmed *Birnbaum*'s conclusion that the plaintiff class for purposes of §

---

[7] The Court noted, for example, that "[t]he wording of § 10(b) directed at fraud 'in connection with the purchase or sale' of securities stands in contrast with the parallel antifraud provision of the [Securities] Act, § 17(a) . . . reaching fraud 'in the offer or sale' of securities." *Blue Chip Stamps,* 421 U.S. at 733-34 (citing 15 U.S.C. §§ 77q, 78j(b)). It also observed that "[t]he principal express nonderivative private civil remedies, created by Congress contemporaneously with the passage of § 10(b), for violations of various provisions of the [Securities Act and the Exchange Act] are by their terms expressly limited to purchasers or sellers of securities." *Id.* at 735-36. In light of that observation, it concluded, "It would indeed be anomalous to impute to Congress an intention to expand the plaintiff class for a judicially implied cause of action beyond the bounds it delineated for comparable express causes of action." *Id.* at 736.

~~[8] The Court noted, for example, that "[t]he wording of § 10(b) directed at fraud 'in connection with the purchase or sale' of securities stands in contrast with the parallel antifraud provision of the [Securities] Act, § 17(a) . . . reaching fraud 'in the offer or sale' of securities." *Blue Chip Stamps,* 421 U.S. at 733-34 (citing 15 U.S.C. §§ 77q, 78j(b)). It also observed that "[t]he principal express nonderivative private civil remedies, created by Congress contemporaneously with the passage of § 10(b), for violations of various provisions of the [Securities Act and the Exchange Act] are by their terms expressly limited to purchasers or sellers of securities." *Id.* at 735-36. In light of that observation, it concluded, "It would indeed be anomalous to impute to Congress an intention to expand the plaintiff class for a judicially implied cause of action beyond the bounds it delineated for comparable express causes of action." *Id.* at 736.~~

10(b) and Rule 10b-5 private damage actions is limited to purchasers and sellers of securities.").

The Court expressed concern about "the danger of vexatious litigation which could result from a widely expanded class of plaintiffs under Rule 10b-5." *Id.* at 740. And it warned against an "endless case-by-case erosion" of the purchaser-seller rule by creating exceptions, concluding that "such a shifting and highly fact-oriented disposition" of statutory standing is not a "satisfactory basis for a rule of liability imposed on the conduct of business transactions." *Id.* at 755.

We have followed the purchaser-seller rule since first articulating it in our 1952 *Birnbaum* decision. *See, e.g., Abrahamson v. Fleschner,* 568 F.2d 862, 868 (2d Cir. 1977), *abrogated on other grounds by Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis,* 444 U.S. 11 (1979); *Lawrence v. Cohn,* 325 F.3d 141, 152-54 (2d Cir. 2003); *Ontario Pub. Serv. Emps. Union Pension Tr. Fund v. Nortel Networks Corp.,* 369 F.3d 27, 34 (2d Cir. 2004). And *Blue Chip Stamps,* which embraced *Birnbaum* nearly five decades ago, continues to govern our analysis of statutory standing for Section 10(b) claims.

C.    Application

The purchaser-seller rule requires plaintiffs to have bought or sold ~~a~~the security ~~of the issuer~~ about which a misstatement was made in order to have standing to sue under Section 10(b). Plaintiffs here lack statutory standing to sue Frutarom based on alleged misstatements ~~that the company made~~ about ~~itself~~Frutarom because they bought shares of IFF, not Frutarom.

As IFF shareholders, Plaintiffs argue that they have standing because there was a sufficiently "direct relationship" between Frutarom's misstatements about itself and the price of IFF's shares. Appellants' Br. at 18.

2

This argument is meritless.

First, judicially created private rights of action should be construed narrowly. *Cf. Alexander v. Sandoval,* 532 U.S. 275, 287 (2001) ("Raising up causes of action where a statute has not created them may be a proper function for common-law courts, but not for ~~federal tribunals." (citation omitted)).[4] Plaintiffs urge us to read~~ [9]

federal tribunals." (citation omitted)).[4] Plaintiffs urge us to read Section 10(b) "flexibly to effectuate its remedial purposes." *Affiliated Ute Citizens v. United States,* 406 U.S. 128, 151 (1972) (quoting *SEC v. Cap. Gains Rsch. Bureau,* 375 U.S. 180, 195 (1963)).[5] *Blue Chip Stamps,* however, recognized the need to limit this judicially created private right of action. *See* 421 U.S. at 749 ("We are dealing with a private cause of action which has been judicially found to exist, and which will have to be judicially delimited one way or another . . . ."). And the Supreme Court has emphasized that "in analyzing . . . Rule 10b-5 . . . we must give narrow dimensions to a right of action Congress did not authorize." *Janus Cap. Grp., Inc. v. First Derivative Traders,* 564 U.S. 135, 142 (2011) (cleaned up); *see also Stoneridge Inv. Partners, LLC v. Sci.-Atlanta, Inc.,* 552 U.S. 148, 165 (2008) ("Concerns with the judicial creation of a private cause of action caution against its expansion. . . . Though it remains the law, the § 10(b) private right should not be extended beyond its present boundaries."). We thus apply the purchaser-seller rule as adopted by

---

~~167 (2008) ("This conclusion is consistent with the narrow dimensions we must give to a right of action Congress did not authorize . . . .").~~

the Supreme Court in *Blue Chip Stamps*. [10] [11]

Second, adopting Plaintiffs' "direct relationship" test for standing would begin exactly the "endless case-by-case erosion" of the purchaser-seller rule about which *Blue Chip Stamps* warned. 421 U.S. at 755. Under Plaintiffs' "direct relationship" test, standing would be a "shifting and highly fact-oriented" inquiry, *id.,* requiring courts to determine whether there was a sufficiently direct link [12] between one company's misstatements and another company's stock price. For example, Plaintiffs point to joint press releases, IFF's SEC filings and investor presentations, and investment bank reports about IFF's acquisition of Frutarom to show a direct relationship between Frutarom's misstatements and IFF's stock. *See* Appellants' Br. at 2427. But *Blue Chip Stamps* cautioned against adding further uncertainty to Section 10(b)'s "rule of liability imposed on the conduct of business transactions." 421 U.S. at 755; *see also Fin. Sec. Assurance, Inc. v. Stephens, Inc.,* 500 F.3d 1276, 1283 (11th Cir. 2007) (concluding that the purchaser-seller requirement entails a "formal" and not a "functional" inquiry because "the Court deliberately endorsed a standing rule that would not be subject to 'endless

---

[10]*See also, e.g., Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media,* 140 S. Ct. 1009, 1015 (2020) (referencing *Sandoval* and *Blue Chip Stamps* in narrowly construing a judicially created private cause of action in the civil rights context); *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta, Inc.,* 552 U.S. 148, 167 (2008) ("This conclusion is consistent with the narrow dimensions we must give to a right of action Congress did not authorize . . . .").

[11] Plaintiffs also argue that Section 10(b)'s language prohibiting "any person" from making material misstatements entitles them to have standing to sue Frutarom. 15 U.S.C. § 78j. But this language speaks only to who may *be sued* under the statute, not who may *bring suit*.

[12] Plaintiffs also argue that Section 10(b)'s language prohibiting "any person" from making material misstatements entitles them to have standing to sue Frutarom. 15 U.S.C. § 78j. But this language speaks only to who may *be sued* under the statute, not who may *bring suit*.

case-by-case erosion' by courts employing a functional analysis to every new group of potential plaintiffs" (quoting *Blue Chip Stamps,* 421 U.S. at 755)).

Third, Plaintiffs' reliance on dicta in *Nortel* is misplaced. In *Nortel,* JDS Uniphase Corporation ("JDS") sold one of its business units to its largest customer, Nortel Networks Corporation ("Nortel") in exchange for Nortel stock. 369 F.3d at 29. Plaintiffs, who were JDS shareholders, sued Nortel for allegedly misleading statements it made about itself leading up to the transaction. *Id.* at 29-30. We held that plaintiffs lacked standing because "[stockholders do not have standing to sue under Section 10(b) and Rule 10b-5 when the company whose stock they purchased is negatively impacted by the material misstatement of another company, whose stock they do not purchase." *Id.* at 34.

Notwithstanding the holding of the case, Plaintiffs argue that *Nortel* would have found standing if there had been a sufficiently "direct relationship" between Nortel's statements and JDS's stock price. They point to dicta noting that because "a merger creates a far more significant relationship between two companies than does the sale of a business unit," "a potential merger might require a different outcome."[6][13] *Id.* But we said that was "a question that we leave for another day and about which we express no opinion." *Id.* For the reasons explained above, we now answer that question by holding that purchasers of a security of an acquiring company do not have

_____

[13] This dicta appears only in the context of distinguishing *Nortel* from another case, *Semerenko v. Cendant Corp.,* 223 F.3d 165 (3d Cir. 2000). *Nortel* rejected *Cendant* as persuasive authority, so Plaintiffs' attempt to invoke *Cendant* to argue that other courts have allowed plaintiffs in their circumstances to sue is unavailing. In any event, as we noted in *Nortel, Cendant* did not discuss standing. *See Nortel,* 369 F.3d at 33 ("[T]he opinion [in *Cendant]* never explicitly addressed the standing requirement of Rule 10b-5, and this limits its persuasiveness. . . . [W]e do not agree with the plaintiffs that it presents a compelling argument in favor of standing.").

Case 27-1076, Document 121-1.09/50/2022, 3591251, Page12 of

standing under Section 10(b) to sue the target company for alleged misstatements the target company made about itself prior to the merger between the two companies.[7][14]

Nor does our subsequent decision *In re NYSE Specialists Securities Litigation,* 503 F.3d 89 (2d Cir. 2007) *("NYSE Specialists"),* change this result. In that case, we clarified that *Nortel* did not preclude purchasers of a stock from suing "underwriters, brokers, bankers, and non-issuer sellers"" under Rule 10b-5. *Id.* at 102. That [15] [16] is entirely consistent with the purchaser-seller rule: Plaintiffs may be able to sue entities other than the issuer of a security if those entities made material misstatements about the ~~issuer~~security, as long as the plaintiffs purchased or sold the securities ~~of the issuer~~ about which the misstatements were made.[1][7][8]

---

[14] The concurrence states that our opinion "create[s] new law" and urges that we should simply apply *Nortel.* Concurrence at 1. We respectfully disagree. The "direct relationship" test in *Nortel* is dicta and, more importantly, is inconsistent with *Blue Chip Stamps,* as explained below. *See infra* at 12.

[15] ~~This dicta appears only in the context of distinguishing *Nortel* from another case, *Semerenko v. Cendant Corp.,* 223 F.3d 165 (3d Cir. 2000). *Nortel* rejected *Cendant* as persuasive authority, so Plaintiffs' attempt to invoke *Cendant* to argue that other courts have allowed plaintiffs in their circumstances to sue is unavailing. In any event, as we noted in *Nortel, Cendant* did not discuss standing. *See Nortel,* 369 F.3d at 33 ("[T]he opinion [in *Cendant]* never explicitly addressed the standing requirement of Rule 10b-5, and this limits its persuasiveness. . . . [W]e do not agree with the plaintiffs that it presents a compelling argument in favor of standing.").~~

[16] ~~The concurrence states that our opinion "create[s] new law" and urges that we should simply apply *Nortel.* Concurrence at 4. We respectfully disagree. The "direct relationship" test in *Nortel* is dicta and, more importantly, is inconsistent with *Blue Chip Stamps,* as explained below. *See infra* at 12.~~

[17] ~~*NYSE Specialists* cast the *Nortel* Court as holding that the~~

In short, Section 10(b) standing does not depend on the significance or directness of the relationship between two companies. Rather, the question is whether the plaintiff bought or sold ~~shares of~~ the ~~company~~securities about which the misstatements were made. *See Nortel,* 369 F.3d at 32 (stating that the plaintiffs' argument that they had standing was "entirely at odds with the purchaser-seller requirement in *Blue Chip Stamps* that 'limits the class of plaintiffs to those who have at least dealt in the security to which the prospectus, representation, or omission relates.'" (quoting *Blue Chip Stamps,* 421 U.S. at 747)). Our conclusion follows directly from our decision in *Nortel.* In both cases, a company whose stock the plaintiffs did not purchase made material misstatements about itself that negatively impacted another company's stock, which plaintiffs did purchase. The fact that this case involved a merger instead of the sale of a business unit and that [18]

IFF incorporated some of Frutarom's misstatements in its SEC filings and investor presentations does not change the analysis here. Plaintiffs did not purchase the securities ~~of the issuer~~ about which misstatements were made, so they did not have standing to sue under Section 10(b) or Rule 10b-5.[19]

---

~~connection between Nortel's false statements and plaintiffs' purchase of JDS stock was "too remote to sustain an action under Rule 10b-5." *NYSE Specialists,* 503 F.3d at 102. But *NYSE Specialists* did not purport to answer the question left open in *Nortel.*~~

[18] *NYSE Specialists* cast the *Nortel* Court as holding that the connection between Nortel's false statements and plaintiffs' purchase of JDS stock was "too remote to sustain an action under Rule 10b-5." *NYSE Specialists,* 503 F.3d at 102. But *NYSE Specialists* did not purport to answer the question left open in *Nortel.*

[19] Of course, this does not mean that a target company and its officers are free to make material misstatements or omissions as long as the company is acquired. In appropriate circumstances, the acquiring company or its shareholders may have claims against the target company and its officers

## III. CONCLUSION

For the reasons set forth above, the district court's judgment is affirmed.

---

under state law. *See, e.g., Capax Discovery, Inc. v. AEP RSD Invs., LLC,* 285 F. Supp. 3d 579, 586-89, 593-95 (W.D.N.Y. 2018); *Chase v. Columbia Nat'l Corp.,* 832 F. Supp. 654, 660-63 (S.D.N.Y. 1993). Here, the amended complaint alleges that IFF and Frutarom sued Defendant Yehudai in Israel for making false statements that were "the same or substantially similar to the false representations Plaintiffs allege in [their] complaint." Joint App'x at 26. Shareholders of the target company may also be able to bring claims against the officers or the target company itself, if it continues to exist as a separate legal entity. *See, e.g., In re Stillwater Cap. Partners Inc. Litig.,* 853 F. Supp. 2d 441, 458-59 (S.D.N.Y. 2012) (allowing investors in a target company to sue the target company and its directors under Rule 10b- 5 for failure to disclose material facts related to a completed merger). And nothing about the statutory standing of private plaintiffs forecloses the SEC from pursuing enforcement actions. *See* 15 U.S.C. § 78u(d)(3) (giving the SEC authority to bring an action to impose civil penalties).

Case 21-1076, Document 144, 11/30/2022, 3428262, Page 15 of 15

[4] See also, e.g., Comcast Corp. v. Nat'l Ass'n of Afr. Am. Owned Media, 140 S. Ct. 1009, 1015 (2020) (referencing Sandoval and Blue Chip Stamps in narrowly construing a judicially created private cause of action in the civil rights context); Stoneridge Inv. Partners, LLC v. Sci. Atlanta, Inc., 552 U.S. 148,