# EXHIBIT 2

# 21-1076

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

◆◆◆

MENORA MIVTACHIM INSURANCE LTD., MENORA MIVTACHIM AND THE FEDERATION OF ENGINEERS PROVIDENT FUND MANAGEMENT LTD., CLAL INSURANCE COMPANY LTD., MENORA MIVTACHIM PENSIONS AND GEMEL LTD., CLAL PENSION AND PROVIDENT LTD., ATUDOT PENSION FUND FOR EMPLOYEES AND INDEPENDENT WORKERS,

*Plaintiffs-Appellants,*

—against—

FRUTAROM INDUSTRIES LTD, ORI YEHUDAI, ARI ROSENTHAL, ALON GRANOT, GUY GILL,

*Defendants-Appellees.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

**BRIEF FOR *AMICI CURIAE*
SECURITIES LAW SCHOLARS
IN SUPPORT OF PLAINTIFFS-APPELLANTS**

CAROL C. VILLEGAS
JAKE BISSELL-LINSK
LABATON SUCHAROW, LLP
140 Broadway, 34th Floor
New York, New York 10005
(212) 907-0700

ERNEST A. YOUNG
  *Counsel of Record*
3208 Fox Terrace Drive
Apex, North Carolina 27502
(919) 360-7718

*Counsel for Amici Curiae Securities Law Scholars*

TABLE OF CONTENTS

Table of Authorities ................................................................................................... i

Interest of *Amici* .......................................................................................................1

Argument.....................................................................................................................2

I.      The panel decision improperly created an additional "statutory standing" rule beyond the requirements of the implied right of action under Rule 10b-5. ...............................................................................3

II.     The panel's new rule would exempt large and well-established categories of securities transactions from scrutiny under Rule 10b-5. ..........6

Conclusion ................................................................................................................11

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Absolute Activist Value Master Fund Ltd. v. Ficeto*,
677 F.3d 60 (2d Cir. 2012) ...................................................................................9

*In re Adobe Sys., Inc. Sec. Litig.*,
139 F.R.D. 150 (N.D. Cal. 1991)...........................................................................7

*Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*,
821 F.3d 352 (2d Cir. 2016) .................................................................................3

*In re Ames Dep't Stores Inc. Stock Litig.*,
991 F.2d 953 (2d Cir. 1993) .................................................................................4

*In re Arakis Energy Corp. Sec. Litig.*,
No. 95–CV–3431 (ARR), 1999 WL 1021819
(E.D.N.Y. Apr. 27, 1999) ......................................................................................7

*In re Barclays Liquidity Cross and High Frequency Trading Litig.*,
390 F. Supp.3d 432 (S.D.N.Y. 2019) ...................................................................3

*Birnbaum v. Newport Steel Corp.*,
193 F.2d 461 (2d Cir. 1952) .................................................................................2

*Blue Chip Stamps v. Manor Drug Stores*,
421 U.S. 723 (1975)...................................................................................2, 4, 6, 7

*Chadbourne & Parke LLP v. Troice*,
571 U.S. 377 (2014)...........................................................................................4, 5

*Deutschman v. Beneficial Corp.*,
841 F.2d 502 (3d Cir. 1988) .................................................................................7

*Lexmark Int'l, Inc. v Static Control Components, Inc.*,
572 U.S. 118 (2014)...............................................................................................3

*Morrison v. Nat'l Australia Bank Ltd.*,
561 U.S. 247 (2010)...............................................................................................9

ii

*In re NYSE Specialists Sec. Litig.*,
   503 F.3d 89 (2d Cir. 2007) (Sotomayor, J.) ......................................................6

*Ontario Pub. Serv. Emps. Union Pension Tr. Fund v. Nortel Networks Corp.*,
   369 F.3d 27 (2d Cir. 2004) ..............................................................3, 5, 6

*In re Oxford Health Plans, Inc. Sec. Lit.*,
   199 F.R.D. 119 (S.D.N.Y. 2001) .....................................................................8

*Santa Fe Indus., Inc. v. Green*,
   430 U.S. 462 (1977)...........................................................................................4

*In re Sci.-Atlanta, Inc. Sec. Litig.*,
   571 F. Supp. 2d 1315 (N.D. Ga. 2007).............................................................7

*SEC v. Texas Gulf Sulphur Co.*,
   401 F.2d 833 (2d Cir. 1968) (en banc) .........................................................5, 6

*Semerenko v. Cendant Corp.*,
   223 F.3d 135 (3d Cir. 2000) .............................................................................6

## Statutes & Rules

15 U.S.C. § 78c(a)(10) ...........................................................................................7

Fed. R. App. P. Rule 29.1(b)...................................................................................1

Fed. R. App. P. 29(4)(E) .........................................................................................1

SEC Rule 10b-5, 17 C.F.R. § 240.10b-5 ....................................................*passim*

## Other Authorities

Max H. Bazerman & Paresh Patel, SPACs: What You Need to Know,
   Harvard Bus. Rev., July-August 2021 .............................................................10

BNY Mellon, *The Year Ahead: The Depository Receipts Market in 2021*......................................................................................................................9

Chicago Board of Options Exchange, *U.S. Options Market Volume Summary*, at https://www.cboe.com/us/options/market_statistics/ (visited Oct. 20, 2022) ........................................................................................8

Ann Lipton, *In Connection With*, Business Law Prof Blog, Oct. 8,
2022 .................................................................................................................10

*See* Tom Zanki, *SPACs Could Face More Litigation Risks Under SEC
Proposal*, Law360, Oct. 4, 2022 ......................................................................10

U.S. Securities and Exchange Commission, *Derivatives*, at
https://www.investor.gov/introduction-investing/investing-
basics/glossary/derivatives#:~:text=Financial%20instruments%20
whose%20performance%20is,movement%20of%20the%20underl
ying%20stock (last visited Oct. 20, 2022) .........................................................8

## INTEREST OF *AMICI*

*Amici Curiae* are scholars who teach and write about securities law.[1] They have an interest and expertise concerning the scope of protections for investors under the national securities laws. This brief is offered to assist the Court in defining that scope.

James Cox is the Brainerd Currie Professor at Duke Law School.

Donald Langevoort is the Thomas Aquinas Reynolds Professor at Georgetown University Law Center.

Frank Partnoy is Adrian A. Kragen Professor at UC Berkeley School of Law.

Joel Seligman is President Emeritus and University Professor at the University of Rochester.

James Spindler holds the Mark L. Hart, Jr., Endowed Chair at the University of Texas School of Law.

Randall Thomas holds the John S. Beasley Chair at Vanderbilt Law School.

Urska Velikonja is Anne Fleming Research Professor at Georgetown University Law Center.

*Amici* join this brief solely in their individual capacities.

---

[1] This brief is filed with the consent of the Parties. Pursuant to Fed. R. App. P. 29(4)(E) and Local Circuit Rule 29.1(b), counsel for *Amici* affirm that no counsel for a Party authored this brief in whole or in part, nor did any person or entity, other than *Amici* or their counsel, make a monetary contribution to this brief's preparation or submission.

1

**ARGUMENT**

The panel decision here adopted a bright-line rule requiring "plaintiffs to have bought or sold a security of the issuer about which a misstatement was made in order to have standing to sue under Section 10(b)." Dkt. No. 129 ("Op.") at 8. This is a new requirement. It does not appear in *Blue Chip* or this Court's decision in *Birnbaum*, in both of which plaintiffs had not purchased or sold *any* security.[2] Moreover, it contradicts controlling Supreme Court and Circuit precedent, which clarify that statutory standing is simply a question of whether the plaintiff has a cause of action on the merits. Section 10(b) and Rule 10b-5 require only that a misrepresentation be made "in connection with" the plaintiff's purchase or sale of a security. The panel's decision overstepped the judicial role by adding a new element to those imposed by Congress and the SEC.

The panel's new requirement appears to create a broad and unanticipated exception to Section 10(b)'s coverage applicable to important categories of securities, such as SPACs and derivatives. That exception demonstrates why the panel's rule is overly categorical as framed and mistaken in its assumption that an entity's misrepresentations about its own business can defraud only purchasers of securities issued by that entity.

---

[2] *See Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975); *Birnbaum v. Newport Steel Corp.*, 193 F.2d 461 (2d Cir. 1952).

I.      **The panel decision improperly created an additional "statutory standing" rule beyond the requirements of the Rule 10b-5 right of action.**

The panel erred by treating statutory standing as a freestanding, judge-made requirement beyond the established elements of a cause of action under Section 10(b) and Rule 10b-5. In so doing, the panel relied on *Ontario Public Service Employees Union Pension Trust Fund v. Nortel Networks Corp.*, 369 F.3d 27 (2d Cir. 2004), which sharply distinguished the "standing" inquiry from the "in connection with" requirement of Rule 10b-5. *See id.* at 33, 34; Op. at 11 n.6 (making the same distinction). But this Court decided *Nortel* before the Supreme Court's decision in *Lexmark International, Inc. v Static Control Components, Inc.*, 572 U.S. 118 (2014). That decision, this Court has acknowledged, "clarified . . . that what has been called 'statutory standing' in fact is not a standing issue, but simply a question of whether the particular plaintiff 'has a cause of action under the statute.'" *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016) (quoting *Lexmark*, 572 U.S. at 128).[3]

The point now is not to correct the panel's terminology but rather to establish that the *only* limits on who can sue under Rule 10b-5 are those established within the elements of the cause of action itself. The panel made no effort to connect its

---

[3] *See also In re Barclays Liquidity Cross and High Frequency Trading Litig.*, 390 F. Supp.3d 432, 446-47 & n.9 (S.D.N.Y. 2019) (discussing the purchaser-seller rule, post-*Lexmark*, as limiting the scope of the Rule 10b-5 cause of action).

holding with the language of Section 10(b) and Rule 10b-5, which limit actionable fraud to that which takes place "in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b-5. Although judicially-implied, this cause of action is a function of Congress's intent in the 1933 and 1934 Acts and their interpretation by the SEC in Rule 10b-5. *See Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 472 (1977). As Justice Powell observed in *Blue Chip*, "[t]he critical phrase in both the statute and the Rule is 'in connection with the purchase or sale of any security.'" 421 U.S. at 756 (Powell, J., concurring). That was the phrase that the Court interpreted in *Blue Chip*, and as such it defines the class of plaintiffs that may sue under Rule 10b-5. *See id.* at 733-34 (majority opinion).

Both the Supreme Court and this Circuit have defined "in connection with" as largely synonymous with the "materiality" element of a securities fraud cause of action. *See Chadbourne & Parke LLP v. Troice*, 571 U.S. 377, 387 (2014) ("A fraudulent misrepresentation or omission is not made 'in connection with' such a 'purchase or sale of a covered security' unless it is material to a decision by one or more individuals . . . to buy or to sell a 'covered security.'");[4] *In re Ames Dep't*

---

[4] *Chadbourne & Parke* construed the Securities Litigation Uniform Standard Act but noted that "we read the [SLUSA] in light of and consistent with . . . the Securities Exchange Act of 1934 and the Securities Act of 1933." 571 U.S. at 389.

*Stores Inc. Stock Litig.*, 991 F.2d 953, 965 (2d Cir. 1993).[5] The Court has "consistently 'espoused a broad interpretation' of 'in connection with' in the context of §10(b) and Rule 10b-5." *Chadbourne & Parke*, 571 U.S. at 392 (quoting *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 85-86 (2006)).

The panel thus erred in grafting an additional element—that the fraudulent statement must have been made about the particular security the plaintiff bought, rather than simply material to the plaintiff's purchase—onto the Rule 10b-5 cause of action. *See* Concurrence, Dkt. No. 122 at 4 (recognizing the panel "created new law"). Although the panel invoked principles of judicial restraint to narrow an implied right of action, it betrayed those principles by adding requirements not authorized by the text of §10(b) or Rule 10b-5. Materiality and loss causation elements further limit who can recover for securities fraud. But statutory standing affords no license to craft new limits on the class of potential plaintiffs.

Efforts to construct additional hurdles have sewn confusion within this Circuit and other circuits. *Nortel* denied standing to persons who "purchased the security of

---

[5] *See also SEC v. Texas Gulf Sulphur Co.*, 401 F.2d 833, 860 (2d Cir. 1968) (en banc) ("[I]t seems clear from the legislative purpose Congress expressed in the Act, and the legislative history of Section 10(b) that Congress when it used the phrase 'in connection with the purchase or sale of any security' intended only that the device employed, whatever it might be, be of a sort that would cause reasonable investors to rely thereon, and in connection therewith, so relying, cause them to purchase or sell a corporation's securities.").

a company other than the one that made the misstatement," 369 F.3d at 28, only to have this Court walk that rule back in *In re NYSE Specialists Securities Litigation*, 503 F.3d 89, 102 (2d Cir. 2007) (Sotomayor, J.). Similarly, the panel here rejected the Third Circuit's reasoning in *Cendant*, Op. at 11 n.6, but the *Cendant* court justifiably thought it was relying on *this Circuit*'s precedent in cases like *Ames Department Stores* and *Texas Gulf Sulphur*. *See Semerenko v. Cendant Corp.,* 223 F.3d 135, 175-76 (3d Cir. 2000). *En banc* review is warranted to reject the panel's new element in Rule 10b-5 cases and restore this circuit's prior interpretation of the "in connection with" requirement.

## II. Applied literally, the panel's rule would exempt large, well-established categories of securities transactions from scrutiny under Rule 10b-5.

*Blue Chip* said the virtue of the purchaser-seller rule "is that it limits the class of plaintiffs to those who have at least dealt in the security to which the prospectus, representation, or omission *relates*." 421 U.S. at 747 (emphasis added). The panel's decision significantly narrows this to "plaintiffs [who] have bought or sold a security *of the issuer* about which a misstatement was made." Op. at 8 (emphasis added). This change would have significant unintended consequences. That is because a misrepresentation may "relate" to important classes of securities that are not "issued" by the company "about which a misstatement was made" but whose value is nonetheless a function of that company's prospects. Examples include options and other derivatives, securities of SPACs, and American depository shares or receipts

6

("ADS"). The panel's decision threatens to strip purchasers and sellers of these securities from protection under Rule 10b-5, contrary to settled law.

In an option contract, "a seller agrees to sell or a purchaser agrees to buy a security at a fixed price on or before a fixed date in the future." *Deutschman v. Beneficial Corp.*, 841 F.2d 502, 504 (3d Cir. 1988).[6] Representations about the value of the underlying stock plainly "relate" to an option contract, because "the market value of an option contract is responsive to changes in the market price of the underlying stock." *Id.*[7] *Blue Chip* made clear that "holders of puts, calls, options, and other contractual rights or duties to purchase or sell securities have been recognized as 'purchasers' or 'sellers' of securities for purposes of Rule 10b-5." 421 U.S. at 751.[8] As Judge Gibbons explained decades ago, the purchaser-seller rule "confined section 10(b) liability to members of the precise class for the protection of which the 1934 Act was enacted: participants in the national securities markets. Options traders are participants in those markets." *Deutschman*, 841 F.2d at 507.[9]

---

[6] Congress included options in the statutory definition of a security in 1982. *See* 15 U.S.C. § 78c(a)(10).

[7] *See id.* at 504 (observing that "misstating material facts to the public" can "caus[e] a distortion in the market price of the underlying security, and in the necessarily related market price of the option contract").

[8] *See also In re Sci.-Atlanta, Inc. Sec. Litig.*, 571 F. Supp. 2d 1315, 1330 (N.D. Ga. 2007) (option sellers rely "on the integrity of the price of the underlying stock"); *In re Adobe Sys., Inc. Sec. Litig.*, 139 F.R.D. 150, 155 (N.D. Cal. 1991) (same).

[9] *See also In re Arakis Energy Corp. Sec. Litig.*, No. 95–CV–3431 (ARR), 1999 WL 1021819, at *3 (E.D.N.Y. Apr. 27, 1999) (adopting Judge Gibbons's

7

The panel decision contradicts this settled law, because an option is typically a private arrangement among investors and *not* "a security of the issuer about which a misstatement was made." This would exclude from fraud protections an options market currently valued at $13 trillion.[10] Similarly, the panel's new rule threatens to strip anti-fraud protection from a vast range of derivatives purchasers. Misrepresentations about a stock may "relate to" purchases of derivative instruments, because the performance of the underlying stock drives the derivatives' value.[11] But options and derivatives seem to fall outside the panel's new standing rule because they are not securities issued by the issuer of the underlying stock.

Similarly, ADS are securities issued by a depository to trade domestically as a stand-in for foreign issued securities. ADS are issued by a U.S. market-maker, not the foreign company itself. This Court and the Supreme Court have addressed large

---

analysis in *Deutschmann* upholding standing of options purchasers under Section 10(b)) (citing and collecting cases); *In re Oxford Health Plans, Inc. Sec. Lit.,* 199 F.R.D. 119, 123–24 (S.D.N.Y. 2001) (holding that options traders were adequate class representatives in a §10(b) suit).

[10] *See* Chicago Board of Options Exchange, *U.S. Options Market Volume Summary*, at https://www.cboe.com/us/options/market_statistics/ (visited Oct. 20, 2022).

[11] U.S. Securities and Exchange Commission, *Derivatives*, at https://www.investor.gov/introduction-investing/investing-basics/glossary/derivatives#:~:text=Financial%20instruments%20whose%20perfor mance%20is,movement%20of%20the%20underlying%20stock (last visited Oct. 20, 2022) ("Derivatives" are "[f]inancial instruments whose performance is derived, at least in part, from the performance of an underlying asset, security or index").

ADS transactions without questioning ADS holders' standing to sue under Section 10(b) and Rule 10b-5.[12] The market for ADS is massive, with $1.3 trillion in assets under management in 2021.[13] However, the panel's rule, taken literally, would exclude purchasers of ADS, even though these securities' value is driven by information about the underlying company's business.

The panel's rule could similarly exempt special purpose acquisition companies ("SPACs"). SPACs issue securities to investors but exist solely for the purpose of merging with another company. Because the SPAC has no operations of its own, the value of its shares is solely a function of its prospect of merging with a company that investors expect to be profitable. A misrepresentation concerning the target company would thus plainly relate to—and be "in connection with"—the purchase or sale of securities issued by the SPAC. A share in the SPAC, however, is equally plainly not "a security of the issuer about which a misstatement was made," as the panel's opinion requires. Op. at 8.

Foreclosing SPAC investors from bringing Rule 10b-5 actions could have disastrous consequences. In 2020, 247 SPACs were created with $80 billion

---

[12] *See Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010); *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60 (2d Cir. 2012).

[13] *See* BNY Mellon, *The Year Ahead: The Depository Receipts Market in 2021*, April 2021, https://www.bnymellon.com/us/en/insights/all-insights/the-year-ahead-the-dr-market-in-2021.html.

9

invested, "account[ing] for more than 50% of new publicly listed U.S. companies."[14]

Regulators have become increasingly concerned about "regulatory arbitrage" in the SPAC market producing widespread opportunities for fraud.[15] Excluding SPAC investors from remedies under Rule 10b-5 would exacerbate this problem and undercut the impact of proposals to require more disclosures in the SPAC process.[16]

These examples show that misrepresentations will often "relate" to, or occur "in connection with," purchases or sales of more than one kind of security. So, too, with mergers. Frutarom's statements about its business were also statements about IFF, because IFF was acquiring Frutarom, and investors in IFF would look to Frutarom's prospects to evaluate the impact of the transaction on IFF's business. That is why, of course, IFF was required to include information about Frutarom in its S4 registration statement for IFF's own securities.[17] Up to now, federal securities law has been flexible enough to accommodate the economic reality of these

---

[14] Max H. Bazerman & Paresh Patel, SPACs: What You Need to Know, Harvard Bus. Rev., July-August 2021, https://hbr.org/2021/07/spacs-what-you-need-to-know.

[15] *See* Tom Zanki, *SPACs Could Face More Litigation Risks Under SEC Proposal*, Law360, Oct. 4, 2022, https://www.law360.com/articles/1479481.

[16] *See* Zanki, *supra* (discussing SEC proposals for enhanced disclosure requirements).

[17] *See* Ann Lipton, *In Connection With*, Business Law Prof Blog, Oct. 8, 2022, https://lawprofessors.typepad.com/business_law/2022/10/in-connection-with.html ("[F]irst, let's just point out the incongruence of treating statements in a prospectus for the sale of the acquirer's stock as not being about the acquirer.").

10

transactions and protect their participants from fraud. The panel's new rule withdrawing that protection would upset pervasive and settled expectations, with no-doubt-unintended consequences for securities markets that are hard to predict. This Court should grant *en banc* review to restore that crucial flexibility and preserve those expectations.

## CONCLUSION

The petition for rehearing *en banc* should be granted.

Respectfully submitted,

DATED: October 21, 2022

/s/ *Ernest A. Young*

Carol C. Villegas
Jake Bissell-Linsk
LABATON SUCHAROW LLP
140 Broadway
New York, NY 10005
(212) 907-0700

Ernest A. Young
    *Counsel of Record*
3208 Fox Terrace Dr.
Apex, NC 27502
(919) 360-7718

*Counsel for Amici Curiae Securities Law Scholars*

11

## CERTIFICATE OF SERVICE

I hereby certify, on the 26th day of October 2022, the foregoing brief was filed electronically with the Clerk of the Court for the United States Court of Appeals for the Second Circuit using the CM/ECF system.  Notice of this filing and its viewing and downloading are thereby provided to all counsel of record by cooperation of the CM/ECF system.

Dated: October 26, 2022

*/s/ Ernest A. Young*
Ernest A. Young
Counsel of Record
3208 Fox Terrace Dr.
Apex, NC 27502
Tel: (919) 360-7718

Carol C. Villegas
Jake Bissell-Linsk
**LABATON SUCHAROW LLP**
140 Broadway
New York, NY 10005
Tel: (212) 907-0700
Fax: (212) 818-0477
cvillegas@labaton.com
JBissell-Linsk@labaton.com

*Counsel for Amici Curiae*