**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re Arrival SA, et al. Securities Litigation | **CASE No.: 1:22-cv-00172-NRM-PK** |
|  | CLASS ACTION |

**PLAINTIFFS' SUR-REPLY IN FURTHER OPPOSITION TO BARCLAYS CAPITAL
INC.'S AND UBS SECURITIES LLC'S MOTION TO DISMISS PLAINTIFFS' SECOND
AMENDED COMPLAINT**

0

Plaintiffs[1] respectfully submit this sur-reply to address Underwriter Defendants' arguments based on legal authority they raise for the first time in their reply in memorandum of law in further support of their motion to dismiss Plaintiffs' Second Amended Complaint ("Reply") (Dkt. No. 110-14). In their Reply, Underwriter Defendants' cite *In re CarLotz Inc. Sec. Litig.*, --- F.Supp.3d ----, 2023 WL 2744064 (S.D.N.Y. 2023) ("*CarLotz*") (Reply at 4, 6) and *Slack Techs., LLC v. Pirani*, 143 S. Ct. 1433 (2023) ("*Slack*") (Reply at 4, 7, 10). *Carlotz* was decided on March 31, 2023, after Underwriter Defendants served their motion to dismiss. *Slack* was decided on June 1, 2023, after service of both Underwriter Defendants' motion to dismiss and Plaintiffs' opposition thereto. Neither case supports dismissal of Plaintiffs' claims against Underwriter Defendants.

In both *Slack* and *Carlotz* the respective courts held that plaintiffs' claims under Section 11 of the Securities Act of 1933 against the issuer of the security were foreclosed because they were unable to trace the shares they purchased to the security's registration statement. None of the Defendants here contend that Plaintiffs are unable to trace their securities to the Registration Statement. Importantly, neither case involved the issue presented here: underwriter status in a unitary integrated offering. In fact, neither case involved underwriters at all. Underwriter Defendants' liability in this case is based on, *inter alia,* the Underwriter Defendants' numerous distributional activities and the contingent nature of their compensation as underwriters, (consistent with the Second Circuit's holding in *Lehman*[2]), and Second Circuit law on integrated offerings- neither of which were at issue in *Slack* or *Carlotz*. As set forth below, *Slack* and *Carlotz* are wholly irrelevant to this Court's analysis.

### A. Slack

---

[1] Capitalized terms herein have the meanings ascribed to them in Plaintiffs' Second Amended Complaint ("Complaint") and memorandum of law in opposition to Underwriter Defendants' motion to dismiss the Complaint, unless otherwise stated.
[2] *In re Lehman Bros. Mortg. Backed Sec. Litig.*, 650 F.3d 167 (2d Cir. 2011).

In their Reply, Underwriter Defendants incorrectly assert that their liability is "foreclosed" by the Supreme Court's June 1, 2023 decision in *Slack Technologies, LLC v. Pirani,* 143 S.Ct. 1433. Reply at 3.Underwriter Defendants contend that "*Slack* is intended to confine liability to underwriters of the securities issued pursuant to the registration statement containing allegedly false and misleading statements." Reply at 7. But the Supreme Court's decision in *Slack* involved a very different issue not before this Court. First, *Slack* did not concern claims against underwriters and did not concern underwriter liability pursuant to Section 11 of the Securities Act. Instead, the issue before the Supreme Court in *Slack* was whether a plaintiff who purchased shares in a direct listing consisting of both registered and unregistered securities could sue based on false statements in a registration statement filed in connection with the listing of registered securities. The Supreme Court held that a plaintiff cannot recover under Section 11 of the Securities Act when the shares he owns are not traceable to a defective registration statement. *Slack* at 1440-41. The Supreme Court remanded to the case to the Ninth Circuit to consider whether the plaintiff could plead and prove that the shares he purchased were in fact traceable to an allegedly defective registration statement. *Id.* at 1442. In *Slack,* the Supreme Court opined on plaintiffs' ability to trace his shares to a defective registration statement, an issue not present here. The *Slack* Court relied on longstanding and uniform precedent requiring a plaintiff to trace his shares to a false and misleading registration statement to bring a Section 11 claim:

> Since *Barnes*, every court of appeals to consider the issue has reached the same conclusion: To bring a claim under §11, the securities held by the plaintiff must be traceable to the particular registration statement alleged to be false or misleading.

*Slack* at 1440-41, *citing Barnes v. Osofky*, 373 F.2d 269, 272 (2d Cir. 1967).

Here by contrast, none of the Defendants challenged Plaintiff Fiorellino's ability to trace his shares to a false and misleading registration statement. (*See* Complaint ¶¶1, 40 ("Named

Plaintiff Salvatore Fiorellino [ ] **_purchased shares of CIIG common stock_** prior to the Business Combination with Arrival closing…When the Business Combination closed, **_Plaintiff exchanged his CIIG shares_** for Arrival Ordinary Shares, which were registered through the Registration Statement…"). And unlike in _Slack_, Plaintiffs here are not basing Underwriter Defendants' liability based on its distribution of securities that merely "bear some minimal relationship to a defective registration statement" simply because it would "allow their case to proceed." _Id._ at _Slack_ at 1441.  Instead, Plaintiffs' allegations against Underwriter Defendants are based on, _inter alia_, caselaw concerning integrated offerings, the SEC's Proposed Rule (which is entitled to deference), Underwriter Defendants' interrelated roles in the CIIG IPO and Business Combination and Underwriter Defendants' distributional activities, the contingent nature of Underwriter Defendants' compensation, and the statutory text of Section 11 concerning what constitutes a "distribution" of securities.

Finally, Underwriter Defendants assert that "**_if_** Plaintiffs 'unitary process' theory had merit, the Supreme Court presumably would have treated Slack's direct listing of traceable and untraceable shares as 'unitary' for purposes of Section 11 liability." Reply at 10.  But this was not plaintiff-respondent argued before the Supreme Court. Instead, the _Slack_ Court held, "beyond assuring us that the rule he proposes would save his case, [ ] Mr. Pirani does not offer much more. He does not explain what the limits of his rule would be, how we might derive them from §11, or how any of this can be squared with the various contextual clues we have encountered…" 1441.[3] Here, Plaintiffs' Opposition explains how the SEC's proposed rule is correct under existing law, Section 11 and its history, and the Second Circuit's decision in _Lehman_. _See_ Plaintiffs'

---

[3] Indeed, the Supreme Court explicitly held, "[t]his Court does not 'presume…that any result consistent with [one party's] account of the statute's overarching coals must be the law.'" _Slack_ at 1441, quoting _Henson Santander Consumer USA, Inc._, 582 U.S. 79, 89 (2017).

Memorandum of Law in Opposition to Underwriter Defendants' Motion to Dismiss. ("Opp.") (Dkt. No. 110-8) at 9-25.

### B. *Carlotz*

Underwriter Defendants also assert that *CarLotz* forecloses their liability. But in *Carlotz* (which is not binding precedent on this Court) the court did not opine on underwriter liability pursuant to Section 11 and did not have occasion to consider the authority and arguments Plaintiffs present here.

First, Underwriter Defendants quote *CarLotz* for the proposition that the SEC's proposed rule does not create "controlling legal authority." Reply at 4. But as explained in Plaintiffs' Opposition, the SEC's proposed rule *clarifies* rather than alters existing law (Opp. at 16-18). Proposed Rule 140a would only *clarify* that an underwriter in the SPAC IPO that "participates in the distribution by taking steps to facilitate the de-SPAC transaction, or any related financing transaction, or otherwise participates (directly or indirectly) in the de-SPAC transaction will be deemed to be engaged in the distribution of securities of the surviving public entity in a de-SPAC transaction within the meaning of Section 2(a)(11) of the Securities Act."). Opp. at 8. While plaintiffs in *Carlotz* cited Proposed Rule 140(a) and stated that the "the current legal landscape supports it," they did not cite caselaw on integration theory or explain the legal doctrines and rationale under which the SEC's proposed rule is entitled to deference (*See* Declaration of Sara Fuks in Support of Plaintiffs' Sur-reply Memorandum of Law at Exhibits 1 and 2 (*CarLotz* Plaintiffs' memoranda of law in opposition and sur-reply to defendants' motion to dismiss, respectively)).

Second, Underwriter Defendants assert that this Court should follow the *CarLotz* Court's holding -that the plaintiff there could not trace his shares to a defective registration statement for

4

purposes of standing to bring a Section 11 claim- and hold that "regardless of when the distribution was complete" underwriters cannot be held liable unless they directly "purchas[ed], s[old] or offer[ed]" Arrival shares. Reply at 3.  Importantly, the *CarLotz* Court's holding that plaintiffs were improperly conflating the de-SPAC registration statement with the SPAC registration statement occurred in the context of the issuer's challenge to statutory standing and Section 11's tracing requirement.  Here, none of the Defendants challenged traceability under Section 11. Nor could they. Unlike the complaint in *CarLotz*, where the ticker symbol of the SPAC merely changed into the ticker symbol of the "new" company on the date of the merger, the SPAC's shares here were de-listed and de-registered and then re-registered as shares in the combined company.[4]

The *CarLotz* Court did not consider underwriter liability, the Second Circuit's five factor test for determining whether multiple offerings are integrated the myriad facts and circumstances present here demonstrating that the SPAC IPO and de-SPAC Business Combination were part of a single plan of financing (*e.g.*, *inter alia,* the fact that Underwriter Defendants underwrote units in the SPAC IPO consisting of public warrants that could not be exercised until *after* the SPAC IPO), and the Underwriter Defendants' participation in distributional activities.

\*\*\*

---

[4] *Compare* Fuks Dec. Ex. 3 (Second Amended Complaint in *CarLotz*) ¶44 ("After the merger, Acamar Partners changed its name to CarLotz, Inc., which is Defendant CarLotz. On this same day Acamar changed its NASDAQ ticker symbol for its common stock from ACAM to LOTZ, and its redeemable warrants from ACAMW to LOTZW.") *with* Complaint ¶¶84-85 ("on March 24, 2021, in connection with the consummation of the Business Combination/IPO, CIIG notified Nasdaq that the Business Combination became effective and requested that Nasdaq file a Notification of Removal of Listing to notify the SEC that CIIG's common stock, units and warrants were to be delisted and de-registered as a result of the business combination. Pursuant to the Business Combination, CIIG shareholders were given the choice to exchange their CIIG shares on a 1:1 basis for Arrival Ordinary Shares or redeem their shares for cash. Beginning on March 24, 2021 Arrival's Ordinary Shares and warrants began trading on the Nasdaq under the new ticker symbols ARVL and ARVLW, respectively.).

As set forth above, *Slack* and *Carlotz* do not support dismissal of Plaintiffs' claims against Underwriter Defendants. Plaintiffs respectfully request that the Court deny the Underwriter Defendants' Motion to Dismiss in its entirety.


Dated:  July 11, 2023                                    Respectfully submitted,


                                                        */s/ Sara Fuks*
                                                        Sara Fuks
                                                        Laurence Rosen
                                                        Phillip Kim
                                                        **THE ROSEN LAW FIRM, P.A.**
                                                        275 Madison Avenue, 40th Floor
                                                        New York, NY 10016
                                                        Tel: (212) 686-1060
                                                        sfuks@rosenlegal.com
                                                        lrosen@rosenlegal.com
                                                        pkim@rosenlegal.com

                                                        *Lead Counsel for Plaintiffs and the Putative Class*