

**The Rosen Law Firm**
I N V E S T O R   C O U N S E L

Sara Fuks, Esq.
sfuks@rosenlegal.com

February 7, 2024

**VIA ECF**

The Honorable Peggy Kuo
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re:    Plaintiffs' Response to Notice of Supplemental Authority
> *In re Arrival SA Sec. Litig.*, 1:22-cv-00172-(NRM) (PK)

Dear Magistrate Judge Kuo:

Lead Plaintiff Mostaco Corp. and named Plaintiff Salvatore Fiorellino ("Plaintiffs") respectfully submit this response to Defendants Barclay's Capital Inc's. ("Barclays") and UBS Securities LLC's ("UBS," together with Barclay's, "Underwriter Defendants") Notice of Supplemental Authority filed on January 30, 2024 ("Jan. 30 Letter") (Dkt. No. 131) concerning the Securities and Exchange Commission's ("SEC") final rules concerning Special Purpose Acquisition Companies (SPACs), Shell Companies, and Projections (the "Final Rules"), Securities Act Release No. 11265, Exchange Act Release No. 99418 (adopted January 24, 2024) (the "Final Release").

Underwriter Defendants incorrectly assert that the SEC's Final Rules "foreclose multiple arguments" Plaintiffs make in opposing Defendants' motions to dismiss. (Jan 30 Letter at 1). But as counsel for the Arrival Defendants[1] themselves explain in a Memo discussing the Final Rules, in the Final Rules the "***SEC reiterated its view that <u>a de-SPAC transaction is effectively an IPO of the target private operating company</u> and that a private operating company's method of becoming public <u>should not negatively impact investor protections</u>***."[2] Nothing in the SEC's Final

---

[1] Arrival Defendants refers to Arrival SA, CIIG Merger Corp., Denis Sverdlov, Tim Holbrow, Michael Ableson, Avinash Rugoobur, Peter Cuneo, Kristen O'Hara, Michael Anatolitis, and Alain Kinsch.

[2] *See* "*SEC Adopts Final Rules Affecting SPACs and de-SPACs and Provides Related Guidance*," Skadden, January 29, 2024 ("Skadden Memo"), available at:

Rules undermines any of the arguments set forth in Plaintiffs' oppositions to Defendants' Motions to Dismiss.

## THE SEC's GUIDANCE IN THE FINAL RELEASE SUPPORTS UNDERWRITER DEFENDANTS' LIABILITY

Underwriter Defendants assert that because the SEC did not formally adopt Proposed Rule 140a they cannot be held liable as statutory underwriters. But as the Skadden Memo acknowledges, in declining to formally adopt Proposed Rule 140a, the "***SEC reiterated it intends to follow longstanding practices*** *of applying the relevant statutory terms* ***'distribution' and 'underwriter' broadly and flexibly, as warranted by the applicable facts and circumstances***." Skadden Memo at 6. Indeed, in declining to adopt a categorical rule that an underwriter in a SPAC IPO is, without exception, an underwriter in the de-SPAC IPO, the SEC provided guidance that reaffirms that given the facts and circumstances present here, Underwriter Defendants face liability as statutory underwriters. As stated in Plaintiffs' Memorandum of Law in Opposition to the Underwriter Defendants' Motion to Dismiss ("UW Opp") (Dkt. No. 110-8), the SEC's guidance clarifies existing law, and confirms that Underwriter Defendants' statutory liability is consistent with congressional interpretation of Section 2(a)(11), and existing law, including Supreme Court precedent.

Further, while not formally adopting Proposed Rule 140a, the SEC's guidance is nevertheless entitled to deference, given its persuasiveness. (UW Opp. at 18-19). *See In re SunEdison, Inc. Sec. Litig.*, 300 F. Supp. 3d 444, 485 (S.D.N.Y. 2018), *citing United States v. Mead Corp.,* 533 U.S. 218, 221, 228, (2001) (affording persuasive weight to SEC guidance and holding that "[i]nformal agency guidance is not entitled to the deference afforded to formal agency rulemaking under *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), but is instead afforded deference according to its persuasiveness.").

First, the SEC's guidance in the Final Release reiterates that the terms "distribution" and "underwriter" should be construed broadly and flexibly:

> Having considered the comments received on proposed Rule 140a and given the broad nature for the definition of underwriter in Section 2(a)(11), we are not adopting Rule 140a. Although we agree with commenters that the term underwriter does not have 'unlimited applicability,' as forth below, ***the statutory definition of underwriter, itself***, encompasses any person who sells for the issuer ***or participates in a distribution associated with a de-SPAC transaction***. To assist parties in applying Section 2(a)(11) to de-SPAC transactions, ***we are providing the following general guidance*** regarding statutory underwriter status…***Rather than promulgate a rule clarifying when a specific party is an underwriter for de-SPAC***

---

https://www.skadden.com/insights/publications/2024/01/sec-adopts-final-rules-affecting-spacs-and-despacs and attached hereto.

> *transactions, we intend to follow the Commission's longstanding practice of applying the statutory terms "distribution" and "underwriter" <u>broadly and flexibly</u>, as the facts and circumstances of any transaction may warrant.*

Final Release at 282 (emphasis added).

Second, the SEC's guidance in the Final Release clarified that to be a statutory underwriter it is not necessary to purchase securities from an issuer with a view toward their distribution. Therefore, despite not being engaged in "activities typical of a named underwriter" and not being formally named as an underwriter, a party may "nevertheless meet the definition of underwriter in the statute." Final Release at 285. Accordingly, "it is insufficient to conclude that a person is not an underwriter solely because he did not purchase securities from an issuer with a view to their distribution. It must also be established that the person is not offering or selling for an issuer in connection with the distribution of the securities, does not participate or have a *direct or indirect participation in any such undertaking, and does not participate or have a participation in the direct or indirect underwriting of such an undertaking*." Final Rules at 285-86. As set forth in Plaintiffs' Opposition, Underwriter Defendants here both directly sold securities in an integrated offering (UW Opp. at 10-13) and engaged in numerous distributional activities. (UW Opp. at 19-25).

Third, the SEC's guidance in the Final Release also distinguished the cases Underwriter Defendants rely on adopting a narrow view of "distribution" and "underwriter," stating that cases declining to find that parties other than formal underwriters were acting as distribution participants "arose in more conventional capital raising contexts and were based on the particular facts and circumstances before the court.[3]"  Indeed, the SEC stated that "it is far from clear that the cases cited by the commenters should be determinative of how the concepts of 'distribution' and 'underwriter' apply in the context of a de-SPAC transaction, which combines elements of both a traditional IPO and an M&A transaction." Final Release at 287.

Finally, the SEC's guidance on underwriter liability in the Final Release notes that statutory underwriter status based on a party's participation in an underwriting is consistent with Supreme Court precedent. The SEC stated that the Supreme Court in *Pinter v. Dahl*, 486 U.S. 622 (1988) "makes clear that, in its view, one who 'participates' or 'takes part in,' an underwriting is subject to section 11 liability."  Final Release, fn. 898.

Underwriter Defendants and Cowen also assert that the SEC's commentary in the Final Release is inconsistent with treating the SPAC IPO, de-SPAC Business Combination and PIPE financing as a single distribution. (Jan. 30 Letter at p. 3). Not so. The commentary Defendants refer to relates to Rule 145a, which now requires de-SPAC's to utilize their own registration statement rather than utilize a proxy statement to solicit votes to accomplish the de-SPAC IPO. But this new rule confirms, rather than undermines, the interpretation of the SPAC IPO and de-SPAC business

---

[3] The SEC specifically cites *In re Lehman Bros. Mortgage-Backed Sec. Litig.*, 650 F.3d 167 (2d Cir. 2011), which Underwriter Defendants heavily rely on, as one such case. Final Release at fn. 913.

combination- in its current state- as a unitary transaction. Moreover, the SEC adopted Rule 145a to enhance investor protections, because "investors in reporting shell companies may not always receive the disclosures and other protections afforded by the Securities Act at a time when there is a fundamental change in the nature of their investment due to the business combination involving another entity that is not a shell company." SEC Final Release at 294. Further, the SEC itself rejected Defendants' argument that Rule 145a in any way affects a party's status as a statutory underwriter. *See Id.* at 288-89 ("We reiterate, however, that *nothing in this release is intended to alter the definition of underwriter for purposes of Section 2(a)(11) of the Securities Act.*"). *See also Id. at* fn. 942 (responding to commenters perceiving a tension between proposed Rule 140a and Rule 145 and stating "the statutory definition of underwriter is sufficient to encompass any person who sells for the issuer *or participates in the distribution associated with a de-SPAC transaction*) (emphasis added).

Accordingly, the SEC's Final Release supports Underwriter Defendants' and Cowen's liability as statutory underwriters.

### THE PSLRA SAFE HARBOR IS UNAVAILABLE TO DEFENDANTS

As Plaintiffs stated in their Opposition to the Arrival Defendants' Motion to Dismiss (Dkt. No. 107-34 at p. 23), the PSLRA safe harbor does not apply to statements made in connection with an offering of securities by a blank check company or made in connection with an IPO. In the Final Rules, the SEC amended the definition of "blank check company" to specifically include SPAC's, such that the safe harbor is automatically unavailable for forward-looking statements made in connection with de-SPAC transactions. Final Release at 256-58. Defendants cite a footnote in the Final Rules which notes that the final rules are not intended to have a retroactive effect, and assert that the PSLRA safe harbor therefore applies to any forward-looking statements in the IPO Materials. (Jan. 30 Letter at 3). But Defendants ignore that the PSLRA's safe harbor is unavailable irrespective of the amended definition of blank check company in the Final Rules. As the SEC stated in the Final Release, "[s]ome commenters suggested the need to alter the availability of the PSLRA safe harbor is overstated. One of these commenters said that, because a target company may register securities in a de-SPAC transaction, the PSLRA safe harbor is already not available to them. *We agree that, since the PSLRA safe harbor is not applicable to IPO's, in certain deal structures where a non publicly traded target company is registering securities that it is offering in the de-SPAC transaction, the PSLRA safe harbor is already unavailable.* SEC Final Release at 271 (emphasis added). Such is the case here. As Plaintiffs stated in their Sur-Reply in Response to Arrival Defendants Reply (Dkt. No. 123 at p. 4), the Prospectus explicitly states that it "forms part of the registration statement filed on F-4 with the [SEC] by [Arrival Group] [and] constitutes a prospectus of [Arrival Group] under Section 5 of the Securities Act, *with respect to the [Arrival Group] Ordinary Shares to be issued to CIIG stockholders if the Business Combination described herein is consummated.*" Accordingly, the statements in the IPO Materials are outside of the PSLRA's safe harbor irrespective of the Final Rules.

Respectfully submitted,

/s/ Sara Fuks
Sara Fuks